RAFAEL ANTONIO RODRÍGUEZ PÉREZ, JUAN NELSON RODRÍGUEZ PÉREZ y ELSY RODRÍGUEZ PÉREZ, demandantes y peticionarios, *v.* SUCN. JUAN RODRÍGUEZ MONTALVO, compuesta por su esposa MARÍA ROSAS y sus hijas VIRGEN M. RODRÍGUEZ ROSAS y DAISY RODRÍGUEZ, demandadas y recurridas.

*Número:* CE-87-486 *Resuelto:* 30 de abril de 1990

288

*Rigoberto Martínez Cruz,* abogado de los peticionarios; *Jacobo Quiñones Santana,* abogado de los recurridos.

El Juez Asociado Señor Hernández Denton emitió la opinión del Tribunal.

En este recurso debemos determinar cuál es el efecto sobre el caudal relicto de la cumplimentación de una "tarjeta testamentaria" en la que un socio de una cooperativa de ahorro y crédito, que muere ab intestato, nombra como sus beneficiarios a su esposa y dos (2) de sus hijas con exclusión de otros herederos forzosos.

Los peticionarios solicitan que revisemos una resolución de la sala de Mayagüez del Tribunal Superior que, sin celebrar previamente una vista, en efecto excluyó unas cuentas en una cooperativa de ahorro y crédito de los bienes del caudal relicto de Juan Rodríguez Montalvo porque el causante había señalado beneficiarios en una "tarjeta testamentaria". Procede dejar sin efecto la resolución recurrida.

I

El Sr. Juan Rodríguez Montalvo falleció sin dejar testamento. Los peticionarios, hijos del primer matrimonio del causante, presentaron una demanda contra su viuda y sus dos (2) hijas procreadas en el segundo matrimonio y solicitaron la partición del caudal hereditario. Durante el proceso, los peticionarios prepararon y sometieron al tribunal un proyecto de partición y adjudicación de bienes del caudal, el cual fue prontamente objetado por la viuda porque incluía como parte de los bienes del caudal relicto de la sucesión acciones en la Cooperativa de Crédito y Ahorro de Hormigueros (en adelante la Cooperativa) valorizadas en $606.48 y una cuenta de ahorro en esa entidad financiera por la cantidad de $48,459.17. Alegaron que como el señor Rodríguez Montalvo las había designado beneficiarias en una "tarjeta testamentaria", el dinero de las acciones y de la cuenta de ahorro no debía formar parte del caudal relicto del causante.

El tribunal de instancia, sin celebrar vista, declaró con lugar el planteamiento de la viuda y le concedió quince (15) días a los

peticionarios para que modificaran el proyecto particional. De esta resolución los peticionarios recurren a este Tribunal mediante *certiorari* y señalan que erró el foro de instancia: (1) al decidir que los fondos del causante constituyen un seguro de vida, (2) al excluir del caudal la participación del causante en los fondos depositados a nombre de la viuda y, en todo caso, (3) al no ordenar la colación de los fondos por concepto de acciones y depósitos en la Cooperativa a pagarse a la viuda y a las dos (2) hijas.

## II

Ante nos ellas sostienen que al haber una designación de beneficiarios, la disposición de todos los bienes en depósito en la Cooperativa debe regirse por el Código de Seguros de Puerto Rico y no por el Código Civil.

El contrato de seguro es definido por nuestro ordenamiento como un acuerdo mediante el cual una persona se obliga a indemnizar a otra, a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto. Art. 1.020 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 102. El seguro de vida provee beneficios en caso de muerte, mutilación por accidente o incapacidad de un ser humano. Art. 4.020 (26 L.P.R.A. sec. 402).

En este caso no hay prueba de que hubiera un contrato de seguros de vida entre la Cooperativa y el señor Rodríguez Montalvo. Por el contrario, con relación a la cuenta de ahorros en controversia, inicialmente la relación del causante con la Cooperativa es de naturaleza dual (accionista y depositante).(1) En estas circunstancias, el causante no era un asegurado de la Cooperativa. El hecho de que en la "tarjeta testamentaria" de una cooperativa de ahorro y crédito se señalen beneficiarios no convierte a la

---

(1) Aunque aparentemente no están admitidas como prueba, en los autos se encuentran copias fotostáticas de las dos (2) libretas de cuenta del causante con la Cooperativa de Ahorro y Crédito de Hormigueros. En la parte inferior de una está impreso "Cuenta de Acciones", y en la otra se indica "Cuenta de Depósitos".

entidad en una aseguradora de su socio. Por lo tanto, el destino de los bienes relictos en la Cooperativa se rige por las disposiciones sucesorias del Código Civil y no por el Código de Seguros de Puerto Rico.

## III

Examinemos la naturaleza del acto de disposición efectuado por el causante.

La copia fotostática de la "tarjeta testamentaria" cumplimentada por el difunto que obra en el expediente de este caso es un formulario preimpreso en donde el socio de la cooperativa, luego de consignar su nombre y dirección, señala los beneficiarios por nombre, dirección y parentesco y le asigna un por ciento del "beneficio". Además, se provee para la firma de dos (2) testigos. La tarjeta también tiene las leyendas siguientes:

> Por la presente designo beneficiarios para que le sean entregados en caso de muerte mis intereses en la sociedad de acuerdo con las disposiciones de la Ley Núm. 205, aprobada el 3 de mayo de 1951.
> Por la presente dispongo que si algunos de los beneficiarios en este formulario no me sobrevive[n] y no hubiese yo designado otros beneficiarios, los intereses en los bienes de la Sociedad, en caso de muerte, se entregarán a mis herederos de acuerdo con las leyes del Estado. *Exhibit* 11 de la Solicitud de *certiorari*, pág. 30.

En sus alegatos, las partes nos invitan a interpretar el alcance del Art. 10 de la Ley General de Sociedades Cooperativas de Puerto Rico, Ley Núm. 291 de 9 de abril de 1946 (5 L.P.R.A. sec. 890(C)), que provee el procedimiento para la disposición del interés de un socio en las cooperativas:

> En caso de muerte del socio el interés de éste en los bienes de la sociedad le será entregado a sus beneficiarios si el socio lo ha designado en la tarjeta testamentaria que preparará la oficina del Inspector de Cooperativas de Puerto Rico, y a falta de la tarjeta testamentaria, a los herederos.

Las partes difieren en torno a lo que significa el "interés del socio" en los bienes de la sociedad. Los peticionarios entienden

que esto sólo se refiere a las acciones de capital. Las recurridas insisten en que bajo dicho concepto se encuentran todos los fondos depositados en la cooperativa.

■ Sin embargo, no tenemos que resolver cuáles fondos quedan comprendidos por el citado precepto de ley,(2) porque el Art. 31 de la Ley de Sociedades Cooperativas de Ahorro y Crédito, Ley Núm. 1 de 15 de junio de 1973, claramente dispone de la controversia:

> *Cualquier cantidad de dinero que haya pagado el socio por acciones y depósitos en la cooperativa, más cualesquiera [sic] suma por concepto de seguro de vida por acciones, dividendos o intereses, que hubiera acumulado dicho socio en la cooperativa, serán pagados [sic] en caso de retiro o expulsión del socio directamente y en caso de muerte a los beneficiarios que designe el socio en tarjeta testamentaria* cuyos términos fijará el Inspector de Cooperativas de Puerto Rico después de haber descontado cualquier deuda que tenga el socio con la cooperativa. El pago se efectuará dentro de los treinta (30) días siguientes al retiro o expulsión del socio.
> La cooperativa de ahorro y crédito podrá requerir que la notificación de retiro de depósitos se haga con treinta días de anticipación y la notificación de retiro de acciones con noventa días de anticipación y la Junta de Directores podrá exigir, cuando lo crea necesario, que la notificación de retiro se haga con mayor anticipación, siempre y cuando obtenga la aprobación del Inspector de Cooperativas de Puerto Rico. Personas que hayan renunciado como socios o hayan sido expulsados de la cooperativa no tendrán más derecho en la cooperativa de ahorro y crédito, pero continuarán siendo responsables por cualquier deuda que hayan contraído con la cooperativa. (Énfasis suplido.) 7 L.P.R.A. sec. 1131.

■ La citada Ley de Sociedades Cooperativas de Ahorro y Crédito reglamenta especialmente aquellas sociedades cooperati-

---

(2) En el derecho de corporaciones una acción de capital se define como: ". . . *the interest* or right which the owner, who is called the 'shareholder' or 'stockholder', has in the management of the corporation, and in its surplus profits, and, in a dissolution, *in all its assets* remaining after the payment of its debts". (Énfasis suplido.) 11 *Fletcher Cyc. Corp.* Sec. 5083 (Perm. ed. 1986).

vas dedicadas "[a]l doble propósito de estimular el ahorro entre sus asociados y de brindarles crédito a tipos de interés razonables. . . ". Art. 2 (7 L.P.R.A. sec. 1102(b)). Estas sociedades incluyen no sólo a las organizadas al amparo de esta ley, sino también a todas aquellas cooperativas incorporadas bajo la anterior Ley de Sociedades Cooperativas de Crédito de 1947, Ley Núm. 10 de 1ro de julio de 1947. La ley de 1973 derogó el estatuto de 1947, pero reconoció y certificó a todas las cooperativas de ahorro y crédito que operaban para aquel momento. Art. 45 de la Ley Núm. 1, *supra*, según enmendado por la Ley Núm. 10 de 9 de abril de 1974 (7 L.P.R.A. sec. 1101n.).

■ Desde la aprobación de la ley especial de 1973, todas las cooperativas de ahorro y crédito en Puerto Rico son reglamentadas por dicho estatuto. Las disposiciones de la Ley General de Sociedades Cooperativas de Puerto Rico de 1946 son *supletorias* cuando no estuvieran en oposición o conflicto, o fueran incompatibles con la ley especial para cooperativas de ahorro y crédito. Art. 42 de la Ley Núm. 1, *supra*, 7 L.P.R.A. sec. 1142.

Aunque la "tarjeta testamentaria" que cumplimentó el causante se refería a una disposición de la Ley General de Sociedades Cooperativas de Puerto Rico, debemos concluir que se trató de un error de la Cooperativa al utilizar el formulario designado para las sociedades que no son de ahorro y crédito. Es menester. señalar que el mismo día que se aprobó la Ley Núm. 205 de 3 de mayo de 1951, a la cual se hace referencia en la "tarjeta testamentaria" cumplimentada en este caso, se promulgó la Ley Núm. 206 que proveyó para el uso de este mecanismo de designación de beneficiarios en las cooperativas de crédito organizadas bajo la ley especial de 1947. La Ley Núm. 206 dispuso en palabras *idénticas* lo mismo que actualmente señala el citado Art. 31 de la Ley de Sociedades Cooperativas de Ahorro y Crédito de 1973.

■ Con relación a los bienes en cooperativas de ahorro y crédito que un socio puede transmitir a través de la "tarjeta testamentaria", los términos del Art. 31 de la Ley Núm. 1, *supra*, autorizan a las cooperativas a pagarle a los beneficiarios designa-

dos *cualquier* cantidad de dinero pagado por el socio por *acciones* y *depósitos* y los *dividendos* o *intereses acumulados*. No hay duda que están comprendidos todos los fondos aportados por el socio en la cooperativa y los ingresos que hayan generado dichos fondos.

 La designación de beneficiarios para los bienes depositados en la cooperativa, efectiva a la fecha del fallecimiento del socio, es una donación que ha de producir sus efectos a la muerte del donante. Como tal, nuestro ordenamiento dispone que se regirá por las reglas de la sucesión testamentaria. Art. 562 del Código Civil, 31 L.P.R.A. sec. 1985. La validez de dicha liberalidad mortis causa está condicionada a que se guarden las solemnidades del testamento. *Lage v. Central Fed. Savings*, 108 D.P.R. 72, 88 (1978).

 Aunque en este caso no se siguió la forma testamentaria, tal omisión no acarrea la nulidad de la donación porque aquí, a diferencia de *Lage v. Central Fed. Savings*, supra, el Art. 31 de la Ley de Sociedades Cooperativas de Ahorro y Crédito, *supra*, provee para la tramitación de la liberalidad prescindiendo de las formalidades de la testamentaría. Ya en *Lage v. Central Fed. Savings*, supra, pág. 88 esc. 18, habíamos reconocido que por legislación especial se podían autorizar este tipo de donaciones.(3) Por tratarse de un caso en donde por estatuto se ha eximido a esta particular donación mortis causa de la rigidez de los requisitos del testamento, resolvemos que es válida la trasmisión de los fondos del causante en la cooperativa a los beneficiarios designados.

---

(3) En *Lage v. Central Fed. Savings*, 108 D.P.R. 72, 88 esc. 18 (1978), dijimos:

"Varias leyes especiales consagran un trámite particular para la designación de beneficiarios o sobrevivientes respecto a ciertos fondos, sin las formalidades de testamentaría. Véanse: Sec. 14 de la Ley Núm. 133 de 28 de junio de 1966, según enmendada, conocida por la 'Ley de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico' (3 L.P.R.A. sec. 862m); y el Art. 11.330 de la Ley Núm. 77 de 19 de junio de 1957, conocida como 'Código de Seguros de Puerto Rico' (26 L.P.R.A. sec. 1133)."

## IV

No obstante la validez formal de la donación, el Art. 31 de la Ley de Sociedades Cooperativas de Ahorro y Crédito, *supra*, no es licencia para que se vulneren los derechos del cónyuge viudo ni las legítimas de los herederos forzosos. A diferencia del Art. 11.330 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 1133, los términos del citado Art. 31 de la Ley de Sociedades Cooperativas de Ahorro y Crédito no protegen a los beneficiarios designados de los "acreedores y representantes del causante". Meramente se limita a "autorizar el pago" de las cuentas a los beneficiarios designados.

## V

Si el socio estableció las cuentas en la Cooperativa durante la vigencia del matrimonio en ausencia de capitulaciones, estos fondos gozan de una presunción de ganancialidad que no queda afectada de forma alguna por la citada ley especial. Art. 1307 del Código Civil, 31 L.P.R.A. sec. 3647. El Art. 31 de la Ley de Sociedades Cooperativas de Ahorro y Crédito, *supra*, meramente facilita la disposición *post mortem* de los bienes de un socio fallecido, pero en modo alguno este artículo modifica la titularidad de las acciones.

Un socio casado podrá utilizar el mecanismo estatuido en la Ley de Sociedades Cooperativas de Ahorro y Crédito para disponer de la *totalidad* de los fondos en depósito en una cooperativa de ahorro y crédito únicamente en cuanto a sus *bienes privativos*. Si los fondos son gananciales, sólo podrá disponer *de su porción privativa* luego de la división y liquidación de la sociedad de gananciales. Véase *Méndez v. Ruiz Rivera*, 124 D.P.R. 579 (1989).

La determinación de si las cuentas en la cooperativa eran privativas o gananciales requería la celebración de una vista para darle la oportunidad a las recurridas de rebatir la presunción

de gananciabilidad y demostrar que las acciones le pertenecían privativamente al causante.

Del mismo modo, se requería una vista para determinar si las acciones y los depósitos *a nombre de la viuda del difunto* eran gananciales o privativos. De ser gananciales, le corresponderá a los herederos participar en la porción que le tocaría al causante en la división de la sociedad conyugal. Erró el foro de instancia al resolver estas cuestiones sin la celebración de una vista.

█ De forma análoga, la designación de beneficiarios tampoco puede afectar la legítima de los herederos forzosos. El Art. 692 del Código Civil, 31 L.P.R.A. sec. 2281, le limita la facultad dispositiva a todo aquel que tenga herederos forzosos al imponerle a los testadores las restricciones del articulado sobre el instituto de la legítima.

█ La legítima es "aquella parte del patrimonio de un causante que la ley reserva a ciertos parientes suyos . . . prohibiéndole, por consiguiente disponer de ella a título gratuito, sea por vía testamentaria o por vía de donaciones intervivos . . .". E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. II, pág. 392. La legítima de los hijos es dos terceras (⅔) partes del haber hereditario del padre y de la madre; no obstante, la mitad de dicha legítima puede aplicarse como mejora para cualesquiera descendientes. Art. 737 del Código Civil, 31 L.P.R.A. sec. 2363.

█ Para computar la legítima deben valorarse los bienes que quedaron a la muerte del causante y deducirse de éste las deudas y cargas. Art. 746 del Código Civil, 31 L.P.R.A. sec. 2372. Además, se debe sumar a dicho valor todas las donaciones no excluidas expresamente por la ley. Íd. Concluidas estas operaciones, puede determinarse el haber hereditario destinado a la legítima dividiendo entre tres (3) para obtener la legítima de los descendientes. González Tejera, *op. cit.*, pág. 404.

■ Para estos cómputos el valor de las donaciones mortis causa *deben incluirse*. Éstas deben tratarse como si fueran legados. *Lage v. Central Fed. Savings*, supra, págs. 82–83. Como tales se consideran igual a cualquier otro bien del caudal.

■ En este caso procede que se computen las legítimas, se determine si hay bienes suficientes para satisfacerlas y, si no los hay, que se reduzca la liberalidad mortis causa hasta el monto necesario. *Cf.* Art. 745 del Código Civil, 31 L.P.R.A. sec. 2371. Conviene señalar que como la donación aquí se trata como un legado, el valor de ésta se debe imputar a la porción de libre disposición. González Tejera, *op. cit.*, págs. 412–413. Pero en la medida en que haya sido beneficiado un descendiente, si no cabe en el tercio libre se reputa mejora en cuanto a su exceso. Art. 755 del Código Civil, 31 L.P.R.A. sec. 2395; González Tejera, *op. cit.*, pág. 412.

## VI

Réstanos considerar si la donación mortis causa de las cuentas de la Cooperativa se tiene que colacionar.

■ La colación está regulada en nuestro ordenamiento en los Arts. 989 a 1004 del Código Civil, 31 L.P.R.A. secs. 2841 a 2856. El Art. 989 la instituye cuando ordena que:

> El heredero forzoso que concurra con otros que también lo sean a una sucesión, deberá traer a la masa hereditaria los bienes o valores que hubiese recibido del causante de la herencia, *en vida de éste*, por dote, donación u otro título lucrativo, para computarlo en la regulación de las legítimas y en la cuenta de partición. (Énfasis suplido.) 31 L.P.R.A. sec. 2841.

■ La doctrina la define como la operación contable practicada como incidente particional que consiste en sumarle a la herencia el valor de lo transmitido gratuitamente por el causante durante su vida a sus herederos legitimarios e imputarle dichas liberalidades a la porción sucesoria de los herederos que las

recibieron, de forma que las tomen de menos de los bienes que el causante les dejó a su fallecimiento. M. Albaladejo, *Curso de Derecho Civil*, Barcelona, Ed. Bosch, 1982, T. V, pág. 186. El fin de la colación es procurar entre los herederos la igualdad en la distribución por presumirse —en ausencia de manifestación en contrario— que el causante no quiso la desigualdad de trato. J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1977, T. V, Vol. 3, pág. 643. Señala González Tejera que la premisa que justifica el instituto es la atribución como anticipo de herencia de lo recibido por los legitimarios del causante a título gratuito durante su vida. González Tejera, *op. cit.*, Vol. I, pág. 379.

█ A menudo, la colación se confunde con la computación de liberalidades. Ello obedece a la confusa redacción del Art. 989 del Código Civil, *supra*, pero la distinción ha sido aclarada ya por la doctrina. Puig Brutau, *op. cit.*, pág. 626. Aunque ambas son operaciones matemáticas efectuadas sobre el valor del caudal relicto, sus propósitos son diferentes. El fundamento de la computación "es proteger la legítima mientras que el de la colación es asegurar la justicia distributiva entre herederos legitimarios, cuando el causante no ha indicado que deban tratarse en forma desigual". González Tejera, *op. cit.*, Vol. I, pág. 380.

█ La computación permite "reconstruir hipotéticamente el patrimonio del causante" añadiéndole al caudal relicto neto el valor de todas las donaciones no excluidas por ley con el fin de calcular las legítimas de los herederos forzosos. González Tejera, *op. cit.*, Vol. I, pág. 403. Esta operación permite posteriormente determinar a qué porción de la herencia deben cargarse las donaciones y legados y reducirlos en los casos en que resulten inoficiosos. Íd., pág. 405.

█ Por otro lado, la colación está destinada a "'repartir el caudal correspondiente a los legitimarios como un complemento de lo que tienen ya recibido, por estimar[se] que tal suele ser la voluntad del causante'". Puig Brutau, *op. cit.*, pág. 152. La

distinción puede comprenderse más fácilmente, como señala Lacruz, contrastando diversos aspectos de ambos institutos:

. . . [M]ientras el *cálculo de la legítima* se rige por normas imperativas, la *colación* puede ser dispensada por el causante, puesto que en realidad sólo se funda en lo que es normal que haya querido; mientras las reglas de *cálculo de la legítima* entran en juego con la existencia de un solo legitimario, la *colación* presupone que concurren varios y que existen donaciones colacionables; mientras el *cálculo de la legítima* puede dar efecto a la reducción de legados y de donaciones, las reglas de la *colación* sólo alcanzan a modificar las proporciones en que les serán adjudicados los bienes de la herencia; en el *cálculo de la legítima* es esencial tener en cuenta las donaciones hechas, no sólo a los legitimarios, sino a los extraños, pues se trata de fiscalizar todos los actos de liberalidad del causante, pero en la *colación* sólo se trata de tener en cuenta las donaciones hechas a legitimarios que son nombrados herederos y aceptan la herencia; etc. (Énfasis en el original.) Puig Brutau, *op. cit.*, pág. 153, citando a J. Lacruz, *Derecho de Sucesiones*, Barcelona, Ed. Labor, 1971, pág. 286 y ss.

Los peticionarios señalan que de resolverse que los bienes del causante en la Cooperativa deben entregarse a las beneficiarias designadas, el valor de éstos se tiene que colacionar. No tienen razón.

Por definición, sólo están sujetas a colación las atribuciones gratuitas a herederos legitimarios efectuadas *durante la vida del causante-donante*. El Art. 991 del Código Civil, 31 L.P.R.A. sec. 2843, exime de colacionar lo dejado en testamento si el testador no dispusiere lo contrario, a menos que se afecten las legítimas. Con este artículo el Código Civil exime de la colación las liberalidades mortis causa en ausencia de expresión contradictoria del difunto. Albaladejo, *op. cit.*, pág. 187.

Como bien señala Puig Brutau, "cabe suponer que las donaciones otorgadas por el causante durante su vida lo han sido a cuenta de lo que el donatario tendrá derecho a recibir por herencia", pero ante la presencia de la última voluntad expresa del difunto "ya no se está en el caso de tener que formular suposiciones . . . ". Puig Brutau, *op. cit.*, pág. 632. En esta última

situación es insostenible la presunción en que se apoya la colación de que el causante no quiso la desigualdad de trato.

■ Según hemos resuelto, la trasmisión de las cuentas que tuvo el causante en la Cooperativa a las beneficiarias se produce como resultado de una donación mortis causa que, por virtud de legislación especial, no tiene que cumplir con la forma testamentaria. Tratándose en este caso de una expresión válida de última voluntad del causante inconsistente con la suposición de equidad en la distribución de los bienes relictos, no procede la colación de los fondos en depósito en la Cooperativa trasmitidos a las beneficiarias.

En resumen, erró el tribunal al rechazar el proyecto particional de las peticionarias sin la celebración de una vista evidenciaria en donde se pudiera dilucidar cuál era la relación jurídica entre el causante y la Cooperativa, la naturaleza privativa o ganancial de los fondos del causante y de su viuda en la Cooperativa y el efecto potencial de la donación mortis causa de dichos fondos sobre las legítimas de los herederos forzosos.

El foro de instancia deberá celebrar una vista y resolver las cuestiones fácticas en controversia a tenor con el derecho expuesto.

*Se dejará sin efecto la resolución recurrida y se devolverá el caso a la sala de origen para la continuación de los procedimientos.*

El Juez Presidente Señor Pons Núñez concurre sin opinión escrita.