# 2000 DTA 141

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA

FRANCISCO VALLES BELTRES; CARLOS JOSE, JOSE ALBERTO Y
SHERLY ANNE, DE APELLIDOS MONTES RAMOS
Apelantes

v.

FLORENTINA MONTES ALVAREZ; MARGARITA MONTES ALVAREZ; NYDIA MONTES; GENNY MONTES; EDGAR MONTES; SANDRA I. TORRES MONTES, FELIX RODRIGUEZ Y LA SOCIEDAD LEGAL DE GANANCIALES, COMPUESTA POR AMBOS
Apelados

Núm. KLAN-99-001391

San Juan, Puerto Rico, a 14 de junio del 2000

Panel sustituto integrado por su Presidente, el Juez Colón Birriel
y los Jueces Rivera Pérez y Rodríguez Muñiz

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Francisco Vallés Beltrés y Carlos José, José Alberto y Sherly Anne, de apellidos Montes Ramos (en adelante los "*apelantes*"), recurren insatisfechos de una "*Sentencia*" emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao, el 12 de noviembre de 1999. Mediante el dictamen, se adjudicó la partida del haber hereditario de la causante Clotilde Montes Alvarez, conocida también como Clotilde Montes de Vallés, según había hecho constar mediante tarjeta testamentaria, en la Cooperativa de Ahorro Crédito de Maunabo (en adelante "*MAUNACOOP*"). También se adjudicó el haber hereditario del causante Francisco Vallés Beltrés (esposo de Clotilde), según había hecho constar mediante testamento abierto. Así hecho, el foro recurrido invalidó la disposición en la tarjeta testamentaria que éste suscribiera en MAUNACOOP, un mes después de haber otorgado el testamento abierto. Veamos el trasfondo fáctico de la controversia ante nuestra consideración.

### II

A la fecha de su matrimonio, los esposos doña Clotilde Montes Alvarez (en adelante "*doña Clotilde*") y Don Francisco Vallés Beltrés (en adelante "*Vallés Beltrés*") no otorgaron capitulaciones matrimoniales. Con ello, el régimen económico que instituyeron a virtud de su matrimonio fue la Sociedad Legal de Gananciales.

El 23 de febrero de 1972, doña Clotilde suscribió una "*Tarjeta Testamentaria*" en MAUNACOOP, mediante la cual designó como beneficiarios a su esposo, Vallés Beltrés, y a su hermana, Margarita Montes Alvarez, por partes iguales (50%). (Apelación, Tarjeta Testamentaria, a la pág. 15 del apéndice). A la fecha de la muerte de doña Clotilde, el 15 de febrero de 1995, no dejó herederos forzosos, por cuanto su esposo Vallés Beltrés y tres (3) de los hijos de un hermano de ésta (quien le premuriera) instaron un pleito sobre su caudal relicto.

Por su parte, Vallés Beltrés otorgó el 1ro. de agosto de 1995, en la ciudad de Maunabo, Testamento Abierto mediante la Escritura Número Ciento Ochenta y Tres (183), ante la Notario Pública Lcda. Carmen Márquez Pérez. (Apelación, Escritura ciento ochenta y tres (183), a las págs. 17-24 del apéndice). Instituyó únicos y universales herederos a Margarita Montes Alvarez, José Alberto y Carlos José, ambos de apellidos Montes Ramos, y a José Arnaldo Vallés. José Alberto Montes Ramos fue nombrado albacea y Don Erasmo Rivera Lebrón, contador-partidor. Posteriormente, el 25 de septiembre del mismo año, suscribió una Tarjeta Testamentaria en la que designó como único beneficiario de sus intereses en MAUNACOOP a José Alberto Montes Ramos. (Apelación, Tarjeta Testamentaria, a la pág. 16 del apéndice)

No bien había comenzado el pleito, y aún en la etapa del diligenciamiento de los distintos emplazamientos, surgió la muerte del viudo y co-demandante Vallés Beltrés, el 20 de octubre del mismo año 1995. (Apelación, Opinión y Sentencia, a las págs. 2-3 del apéndice), quien tampoco dejó herederos forzosos. Así, pues, el juicio en su fondo fue señalado para el día 15 de octubre de 1999. Las partes litigantes solicitaron del tribunal someter el caso por los documentos obrantes en el expediente, pues sólo quedaba por resolverse una cuestión estrictamente de derecho: determinar cuál era el documento normativo para practicar la división, partición, adjudicación de los bienes dejados por Vallés Beltrés (fuera mediante testamento o tarjeta testamentaria).

Así, pues, el foro recurrido determinó que procedía reconocer la voluntad de doña Clotilde mediante su Tarjeta Testamentaria y, de otro modo, dejó sin efecto la Tarjeta Testamentaria suscrita por Vallés Beltrés, por lo que lo apelantes acuden ante nosotros, levantando el siguiente y único señalamiento de error:

*"ERRO EL HONORABLE TRIBUNAL DE INSTANCIA AL CONCLUIR QUE EL DOCUMENTO NORMATIVO ES EL TESTAMENTO DEL 25 DE AGOSTO DE 1995 Y NO LA TARJETA TESTAMENTARIA DEL 25 DE SEPTIEMBRE DEL MISMO AÑO."*

## III

En *Rodríguez Pérez v. Sucn. Rodríguez*, 126 D.P.R. 284, 296 (1990), el Tribunal Supremo dispuso que la designación de beneficiarios mediante tarjeta testamentaria, efectuada por un socio de una cooperativa de ahorro y crédito, no constituye una *"licencia para que se vulneren los derechos del cónyuge viudo ni las legítimas de los herederos forzosos"*. En el caso de autos, si bien no existían herederos forzosos a la muerte de doña Clotilde, su cónyuge supérstite (Vallés Beltrés) tenía derecho a disfrutar del 50% de los bienes existentes en MAUNACOOP a nombre de la causante (doña Clotilde), pues ello constituia la partida ganancial de que era acreedor como miembro de la extinta Sociedad de Gananciales que debía ser liquidada. *"Si el socio estableció las cuentas en la Cooperativa durante la vigencia del matrimonio, en ausencia de capitulaciones, estos fondos gozan de una presunción de gananciabilidad que no queda afectada de forma alguna por la citada ley especial [Ley de Sociedades Cooperativas de Ahorro y Crédito, 26 L.P.R.A. sec. 3647]"*. *Rodríguez Pérez v. Sucn. Rodríguez*, *supra*. A tales efectos, véase además, Comparecencia de la [Apelada] (sic.), Doña Margarita Montes Alvarez, a la pág. 3, donde señala: *"todos los fondos depositados e invertidos en acciones cooperativas eran gananciales"*.

En su consecuencia, no existiendo prueba en autos para derrotar la presunción de ganancialidad de dichos bienes respecto a los haberes de doña Clotilde en MAUNACOOP, procede reconocer el pago a los beneficiarios designados --mediante tarjeta testamentaria-- exclusivamente sobre el 50% de los bienes que constituyen la disposición *post mortem* de sus bienes privativos. El foro recurrido reconoció *"el pago [del] 50% de las acciones o beneficios en dicha Cooperativa"* en favor de Margarita Montes Alvarez (Apelación, Opinión y Sentencia, a la pág. 5 del apéndice) y el otro 50% a favor del viudo, cuando en realidad debió especificar que dicha donación *post mortem* debía ser aplicada, exclusivamente, sobre los fondos privativos de la causante. Es decir, a la muerte de doña Clotilde, Vallés Beltrés adquiere la titularidad del 50% del total de los créditos cooperativos a nombre de la causante (por constituir su participación en la división y liquidación de la extinta Sociedad Legal de Gananciales), más el 50% de los fondos privativos de ésta (por designación como beneficiario de la tarjeta testamentaria de doña Clotilde). De aquí que procede modifiquemos la determinación del foro recurrido, a fin de precisar y aclarar la suerte que habrá de correr lo relacionado al caudal hereditario de doña Clotilde, toda vez que *"[n]o hay ningún otro documento, formal ni informal, en que ella expresara su intención sobre el destino de sus bienes para después de su muerte."* (Comparecencia de la [Apelada] (sic.), Doña Margarita Montes Alvarez, a la pág. 2). *Hernández Hernández v. Espinosa*, Op. de 3 de abril de 1998, **98 J.T.S. 41**, a la pág. 781 (sobre errores no señalados por las partes).

Con relación al caudal hereditario de Vallés Beltrés, el foro recurrido reconoció, validó y adjudicó, exclusivamente, la voluntad testamentaria del causante, sin reconocer la Tarjeta Testamentaria de éste, suscrita un mes después de haber otorgado testamento abierto. Basó su determinación en lo resuelto en *Lage v. Central Fed. Savings*, 108 D.P.R. 7 (1978), donde el Tribunal Supremo tuvo la oportunidad de revisar los aspectos relacionados al establecimiento de una cuenta bancaria de ahorros, denominada *"tenencia mancomunada con derecho de sobrevivencia"* (*"joint tenants with right of survivorship"*). El Tribunal aclaró que en consideración a los términos del contrato allí suscrito, tales cuentas bancarias no constituian una donación *inter vivos Lage v. Central Fed. Savings*, *supra*, a la pág. 88, sino:

*"[U]na donación condicionada a la muerte del disponente, para cuya validez era menester se guardaran las solemnidades del testamento. La inobservancia de este requisito de forma ... determina la inexistencia de la donación."* [Cita omitida]

Debemos, pues, destacar que, en tal ocasión, el Tribunal Supremo calificó ese tipo de cuentas bancarias de ahorro como donaciones *mortis causa*, reguladas a la luz de disposiciones contractuales específicas. Validez que quedó sujeta al amparo de la observancia de las solemnidades testamentarias. Así, pues, se indicó en *Lage v. Central Fed. Savings, supra*, a las págs. 88-89:

*"Robustece esta solución el contenido de lo que constituye "caudal relicto bruto" en la Ley de Contribuciones sobre Caudales Relictos y Donaciones de Puerto Rico (13 L.P.R.A. sec. 5002 y ss.), en el sentido de que pertenecen y corresponden a tal concepto los fondos que una persona en vida hubiese depositado en una cuenta bancaria mancomunada con otra persona, a pesar de que en la misma se provea el derecho de sobrevivencia a favor del otro titular de la misma."*

No es de extrañar, pues, cuando en *Rodríguez Pérez v. Sucn. Rodríguez*, 126 D.P.R. 284, 295 (1990), el mismo Tribunal señalara:

*"Aunque en este caso no se siguió la forma testamentaria, tal omisión no acarrea la nulidad de la donación porque aquí, a diferencia de Lage v. Central Fed. Savings, supra, el Art. 31 de la Ley de Sociedades Cooperativas de Ahorro y Crédito, supra, provee para la tramitación de la liberalidad prescindiendo de las formalidades de la testamentaría."*

Toda vez que el legislador consagra trámites particulares para la designación de beneficiarios respecto a ciertos fondos, no es necesario cumplir con las formalidades testamentarias si así lo hace constar mediante legislación expresa. *"Por tratarse de un caso en donde por estatuto se ha eximido a esta particular donación mortis causa de la rigidez de los requisitos del testamento, resolvemos que es válida la transmisión de los fondos del causante en la cooperativa a los beneficiarios designados." Rodríguez Pérez v. Sucn. Rodríguez, supra.* Evidentemente, el caso antes señalado ya no trata sobre *"tenencias mancomunadas con derecho de sobrevivencia"*, sino de la designación de beneficiarios mediante tarjetas testamentarias, regidas por la Ley de Sociedades Cooperativas de Ahorro y Crédito, Ley Núm. 1 de 15 de junio de 1973, 7 L.P.R.A. sec. 1102(b). En consideración a lo cual, resulta claro que, en el caso que nos ocupa, la validez de la donación *mortis causa* nunca quedó supeditada a la existencia (o no) de la voluntad expresa de un testador.

Correspondía demostrar a los apelados, mediante vista evidenciaria, las razones para creer que al momento en que el causante suscribió su Tarjeta Testamentaria no gozaba de capacidad plena para así hacerlo. Toda vez que dicha parte estipuló someter el caso conforme las constancias de los documentos obrantes en el expediente y limitar la controversia a consideraciones exclusivamente de derecho, renunciaron a su oportunidad de plantear la alegada incapacidad del causante (Vallés Beltrés), respecto a la integridad de sus facultades mentales, para disponer de sus bienes. A tales efectos, los tribunales apelativos están facultados para negarse a considerar, en apelación o revisión, cualquier asunto que no ha sido debatido o considerado en etapas anteriores a los procedimientos ante su consideración. *Murcelo v. H.I. Hettinger & Co.*, 92 D.P.R. 411, 426 (1965), y *Zalduondo v. Iturregui*, 83 D.P.R. 1, 12 (1961).

Cuando de donación se trata, debe imponerse el principio jurídico de salvaguardar los intereses que merecen protección, por encima del interés o beneficio del donatario, con total independencia de la voluntad inicial del donante. Puig Brutau, *Fundamentos de Derecho Civil*, Tomo II, Vol. 2, 1956, a la pág. 59. Así, pues, la validez de la Tarjeta Testamentaria de Vallés Beltrés constituye un hecho del todo independiente a la existencia de un testamento válido. Su liberalidad *mortis causa* quedó supeditada a que se salvaguardaran las solemnidades testamentarias sobre interpretación de los testamentos y a la protección de las legítimas de herederos forzosos.

No existiendo cónyuge supérstite o legítimas de herederos forzosos que proteger, la designación de beneficiarios en la Tarjeta Testamentaria de Vallés Beltrés, debió ser validada por el foro apelado, y aplicada, con exclusividad, a las acciones, depósitos, dividendos intereses acumulados, como socio de MAUNACOOP. *"No hay duda que están comprendidos todos los fondos aportados por el socio en la cooperativa y los ingresos que hayan generado dichos fondos." Rodríguez Pérez v. Sucn. Rodríguez, supra*, la pág. 295. Así visto, tal intención debió

considerarse como una derogación expresa de aquella parte de la cláusula *"UNDECIMA"* del testamento otorgado por el causante Vallés Beltrés, respecto a aquello en que ambas disposiciones eran incompatibles. (Apelación, Escritura ciento ochenta y tres (183), *supra*, a la pág. 20 del apéndice)

Finalmente, y no por ello menos importante, la porción del 50% correspondiente a la participación de Vallés Beltrés en la división y liquidación de la extinta Sociedad Legal de Gananciales, que acreció el patrimonio de éste, de ninguna manera podría quedar sujeto a la designación de beneficiarios de su Tarjeta Testamentaria, por cuanto dicha porción, a la fecha de su muerte, no le había sido adjudicada (pues aún no se había liquidado la sociedad conyugal). *Méndez v. Ruiz Rivera*, 124 D.P.R. 579 (1989). Así, pues, dicha partida queda sujeta a partición, conforme dispone la claúsula *"UNDECIMA"* del testamento otorgado por el causante Vallés Beltrés. (Apelación, Escritura ciento ochenta y tres (183), *supra*, a la pág. 20 del apéndice)

En mérito a lo expuesto, revocamos el dictamen apelado, a fin de atemperar las resultas del pleito a lo antes expuesto.

Lo pronunció y manda el Tribunal y lo certifica la Señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General