CARLOS M. FAMANIA y OTROS, demandantes y recurridos, *v.* CORPORACIÓN AZUCARERA DE PUERTO RICO, demandada y recurrente.

*Número:* R-81-474     *Resuelto:* 15 de diciembre de 1982

*Héctor M. Lafitte,* de *Lafitte & Domínguez,* abogado de la recurrente; *Julio Alvarado Ginorio,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

Trata este caso de la reclamación que un grupo de trabajadores de la Corporación Azucarera de Puerto Rico instó

contra su patrono en virtud de la Ley de Salario Mínimo, Ley Núm. 96 de 26 de junio de 1956, según enmendada, 29 L.P.R.A. sec. 245 *et seq.* Conforme dicho estatuto el patrono venía obligado a pagarles una suma de dinero por concepto del incremento en el precio mundial del azúcar crudo, además del salario acordado en los convenios colectivos que reglamentan las relaciones y condiciones de trabajo entre ambas partes. La Corporación Azucarera adujo que los referidos convenios incluían el pago del aumento en el precio del azúcar. [1]

El tribunal de instancia dictó sentencia en que declaró con lugar la reclamación y ordenó a la Corporación pagar a los trabajadores las cuantías por éstos solicitadas. Acudió la querellada ante nos y acordamos revisar para examinar más a fondo la controversia.

El estudio de los autos nos convence de que no incidió el tribunal sentenciador al interpretar la ley y concluir que el incremento en el precio del azúcar se pagaría sobre el salario acordado en los convenios.

La Sec. 6 de la Ley de Salario Mínimo, 29 L.P.R.A. sec. 245h, dispone que a los trabajadores de las fases fabril y agrícola de la industria azucarera se les pagará sobre el salario básico establecido en la ley o por decretos mandatorios de la Junta de Salario Mínimo un aumento a calcularse a base del precio del azúcar en el mercado. En cuanto a las situaciones en que los jornales de los trabajadores estén fijados por convenios colectivos y sean mayores a los establecidos por ley o decreto mandatorio se ordena que:

> En todos los casos en que por convenios colectivos se hayan establecido salarios básicos superiores a los fijados en los decretos mandatorios, o los fijados por las secs. 245 a 246m de este título, *los aumentos se harán sobre tales salarios básicos establecidos por convenio colectivo.* (Énfasis suplido.) 29 L.P.R.A. sec. 245h(b).

---

[1] A solicitud de la querellada autorizamos la transcripción del testimonio del Sr. Félix Calderón, perito de la Corporación Azucarera.

Surge claramente de esta disposición que los trabajadores cuyos jornales estuvieren fijados en convenios colectivos y fueren mayores a los establecidos en ley o decretos mandatorios —como en el caso de autos— tendrán derecho a recibir el aumento basado en el precio del azúcar sobre dichos sueldos acordados.

El historial legislativo de esta disposición confirma que éste fue el propósito de la misma. Al discutirse cómo operaría el referido aumento se expresó:

Sr. Viera Morales: La pregunta es cómo podría explicarme, con un ejemplo hipotético, la operación matemática de esta enmienda en el Proyecto.

Sr. Milán Padró: Será de la siguiente manera: Como el Compañero sabe, hay un tipo básico que fija la ley, pero ese tipo básico ha sido variado muchas veces y en muchos sitios por convenios colectivos que aumentan ese tipo en diez centavos, en nueve centavos, dado sea el caso, ¿verdad? en lo que sea. Entonces, el aumento de tres y medio centavos, cuando pase de $7 el precio del azúcar, vendrá a ir sobre el tipo básico establecido por la ley en aquellos sitios en donde el convenio colectivo no haya dispuesto que sea mayor. En ese caso, en aquellos sitios donde no hay convenio colectivo, el aumento va a ser sobre el tipo básico fijado por el convenio colectivo.

Sr. Viera Morales: ¿Debo entender entonces, señor Presidente, que como resultado de esta enmienda se eliminan esos aumentos pequeños que se ha decretado mediante convenios colectivos?

Sr. Milán Padró: No, no se eliminan, se salvan. Se salvaguardan . . .

Sr. Viera Morales: Sí.

Sr. Milán Padró: Porque el tipo que va a regir es el establecido por la ley o el que ha sido establecido mediante contratación colectiva sin el aumentito ese que se ha conseguido por contratación colectiva, siete centavos. Ese va a ser el tipo mínimo, sobre ese es que se va a computar el aumento de salario.

Sr. Viera Morales: Si por ejemplo, el tipo básico fuera 3.10 . . .

Sr. Milán Padró: Ese es el tipo básico para el cortador de caña.

Sr. Viera Morales: . . . si mediante un convenio colectivo se haya aumentado a 3.17.

Sr. Milán Padró: Exacto. El aumento posterior viene sobre 3.17.

Sr. Viera Morales: ¿Sobre 3.17?

Sr. Milán Padró: Exacto. *Diario de Sesiones*, Vol. 17, Tomo 5, pág. 2105 (1963).

No obstante la claridad de la disposición transcrita y de su historial la recurrente insiste en que no le aplican los beneficios de esta ley a los recurridos, interpretándola contrario a su espíritu. Argumenta que el aumento en el precio del azúcar estaba incluido en el salario acordado en los convenios porque se pactó el pago de salarios mínimos, que a su entender equivale a los salarios básicos impuestos por ley o decreto mandatorio más el incremento en el precio del azúcar. No estamos de acuerdo. En primer lugar, no es lógico pensar que se puede incluir en un convenio colectivo que normalmente ha de estar en vigor por varios años aumentos que no pueden preverse con seguridad debido a que se computan periódicamente a base de las fluctuaciones que tiene en el mercado el precio del azúcar. Además, no surge de la ley ni de los convenios colectivos envueltos que exista tal diferencia entre salario mínimo y salario básico. Por el contrario, de la definición en la Ley de Salario Mínimo y del uso del término salario básico se desprende que se refieren a lo mismo: el salario menor a que tendrán derecho los trabajadores según sea establecido en la ley o decretos mandatorios. Véase 29 L.P.R.A. secs. 245h y 246h.

No es atendible en este foro el argumento de la recurrente sobre el impacto oneroso que tiene el estatuto en sus finanzas. Nuestra función es interpretar la ley y no juz-

gar su bondad o sabiduría. Por eso, no debemos frustrar los propósitos de un estatuto cuando la letra es clara y expresa sin ambigüedad la intención del legislador.

*Se dictará sentencia en que se confirme la del tribunal de instancia.*

El Juez Asociado Señor Irizarry Yunqué no intervino.