*92 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos, Luz María Garufa Centeno y la Sucesión de Gregorio Montañez Cruz en ánimo de solicitar la revocación de sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Guayama (en adelante, “TPF) de 26 de octubre de 2004, sobre consignación de dinero. Mediante la misma, se declara la validez de una tarjeta testamentaria donde el causante Gregorio Montañez Cruz había designado como beneficiada, en un cien por ciento, a su hermana Guillermina Montañez Cruz. En la referida sentencia, el TPI establece que dicha designación mediante tarjeta testamentaria constituye una donación mortis causa sujeta a las reglas de sucesión testamentaria la cual no puede afectar la legítima de los herederos forzosos. Dicho razonamiento se apoyó en Rodríguez Pérez v. Sucn. Rodríguez, 126 D.P.R. 284 (1990), opinión que resolvió, en aquel momento histórico, que el efecto de la designación de beneficiarios estaba regulado por el Artículo 31 de la hoy derogada Ley Núm. 1 de 15 de junio de 1973, 7 L.P.R.A. see. 1131, conocida también como la “Ley de Sociedades Cooperativas de Ahorro y Crédito”, parangonando así las tarjetas testamentarias con una donación mortis causa, a regirse por las reglas de sucesión testamentaria.
Examinados los escritos de las partes y documentos en el expediente ante nos, se revoca la sentencia apelada.
I
Allá para el 31 de octubre de 1989, el Sr. Gregorio Montañez Cruz abrió una cuenta de ahorros en la Cooperativa de Ahorro y Crédito de Maunabo (en adelante, “Mauna Coop”) utilizando unos $200 como cantidad de apertura de la misma. Al momento de hacerse socio de Mauna Coop, el Sr. Montañez Cruz suscribió una tarjeta testamentaria, señalando como beneficiarla a su hermana Guillermina Montañez Cruz, del cien por ciento de sus haberes en la cooperativa. Con posterioridad a dicha designación, es decir, en mayo de 2001, el Sr. Montañez Cruz resultó ganador de un premio de la lotería de Puerto Rico por la cantidad de $75,000.00, depositando gran parte del mismo en su cuenta de ahorros de Mauna Coop.
El 24 de noviembre de 2001, el Sr. Montañez Cruz falleció intestado. Al momento de su fallecimiento, éste se encontraba casado con la Sra. García, con quien procreó siete hijos. El TPI declaró en el caso Civil Núm. GJV 2002-0008, como únicos y universales herederos a los apelantes, sus siete hijos y a su esposa Luz María García Centeno.
El 2 de febrero de 2002, la representante legal de Mauna Coop apuntó en una misiva dirigida al representante legal de la parte apelante, que el 17 de enero de 2002, la Cooperativa había recibido un requerimiento sobre los haberes del Sr. Montañez Cruz en esa institución. Señaló además, que el 23 de enero de 2002 recibió otro de la hermana del causante fundamentada en la designación de ésta como beneficiaría en la tarjeta testamentaria.
El 25 de marzo de 2002, los herederos del Sr. Montañez Cruz, mediante una carta dirigida al Presidente de Mauna Coop solicitaron formalmente la congelación y entrega de los bienes del causante allí depositados. No obstante, la Cooperativa se negó a entregar los mismos debido a que en la tarjeta testamentaria que cumplimentara el causante al abrir su cuenta, éste dispuso a su hermana, la señora Guillermina Montañez Cruz, como única beneficiaría del cien por ciento de la cantidad consignada.
Con posterioridad a varios trámites, el 23 de mayo de 2002, la parte apelante instó en la Corporación para la Supervisión de Seguros de Cooperativas de Puerto Rico (en adelante, “COSSEC’) una querella contra Mauna Coop. Esgrimió que la Cooperativa se negaba a desembolsar los bienes del Sr. Montañéz Cruz sin razón fundamentada. A esos efectos, solicitó la orientación y determinación de la agencia recurrida.
El 13 de junio de 2002, Mauna Coop presentó su Contestación a la Querella. El 13 de agosto de 2002, se *93 celebró en COSSEC una vista iñfortftal éntre ías partes y la Sra. Guillermina Mofttañez Criíz no acudió a la misma. El 12 de septiembre de 2002, Mauna Coop presentó ante él TPI unía Moción de Consignación, anexando la presentación de un cheque por la cantidad de $67,206.99. Así las cosas, el 13 de septiembre de 2002, él representante legal de la Sra. Guillermina Mofttañez dirigió una iftisiva a COSSEC, indicando que eí 15 de agosto de 2002 había peticionado formalmente a Mauna Coop la efttréga a su cliente de los bienes del Sr. Montañez. Asimismo, señaló que reiteraban su reclamación de los fondos en la cooperativa por ser la Sra. Montañez la beneficiarla de la tarjeta testamentaria. El 28 de enero de 2003, Mauna Coop presentó ante COSSEC una Moción Informativa y Solicitud de Cierre de Expediente, señalando haber consignado ante el TPI los dineros objeto de la presente controversia.
Entretanto, el 5 de febrero de 2003, la parte apelante presentó su Oposición al Archivo del Caso. El 12 de febrero de 2003, COSSEC emitió la Resolución Sumaria de autos desestimando la querella. En suma, precisó que como consecuencia de haberse consignado los fondos en disputa ante el tribunal de instancia, la agencia carecía de remedio a conceder, por lo cual la reclamación de la parte apelante había advenido académica. Mediante Resolución de 18 de mayo de 2003, COSSEC denegó la moción en reconsideración que presentara la Sra. García.
Ante dicha determinación, el 22 de abril de 2003, la Sra. García acudió ante nos mediante recurso de revisión administrativa de retención de bienes hereditarios. En el mismo, señaló que la agencia erró al decretar el archivo del caso sin adjudicar las controversias que se le presentaron; entre ellas, el planteamiento de la parte apelante sobre nulidad de las tarjetas testamentarias por su derogación legislativa tácita.
Mediante Sentencia emitida el 7 de noviembre de 2003 en el caso alfanumérico KLRA-2003-00279, el entonces Tribunal de Circuito de Apelaciones dictaminó que la actuación de COSSEC no fue irrazonable o caprichosa al negarse a pasar juicio sobre la nulidad o validez de la tarjeta testamentaria, ya que “son los tribunales los llamados a ponderar, auscultar y determinar la validez de la tarjeta testamentaria en cuestión y la subsiguiente adjudicación de los bienes en litigio.” Cabe resaltar que en la nota al calce número 16 de la referida sentencia, se recalcó que “[pjor razón de la cuestión planteada ante nos, habremos de limitarnos a atender los asuntos relacionados a la desestimación de la querella de autos. Así, pues, no habremos de emitir en esta etapa, manifestaciones en torno a la naturaleza privativa o ganancial de los bienes en cuestión, la validez de la tarjeta cumplimentada o cualesquiera asuntos relacionados con ello.” (Énfasis suplido.)
Así las cosas, el 14 de enero de 2004, la parte apelante presentó ante el TPI un escrito intitulado Moción Solicitando Adjudicación en el pleito sobre consignación de dinero. Dicha petición se circunscribió a que el tribunal apelado adjudicará la titularidad de los haberes consignados a favor de la parte compareciente a tenor con el Memorando de Derecho presentado ante el otro panel el cual articulaba su reclamo de declarar las taijetas testamentarias nulas, petición a la cual se opuso la parte apelada mediante su Solicitud de Sentencia de 25 de junio de 2004.
Tras varios trámites procesales, el 26 de octubre de 2004, el TPI resolvió que el balance de la cuenta ($67,206.99) era de carácter ganancial. Por ello, adjudicó la mitad de dicha cantidad equivalente a $33,603.49 a la viuda del causahabiente, la apelante Luz María García y los restantes $33,603.49 los constituyó como el monto objeto de la designación del beneficiario en la tarjeta testamentaria a favor de la hermana del causante, la apelada Guillermina Montañez Cruz. Señaló el TPI que dicha designación constituía una donación mortis causa sujeta a las reglas de la sucesión testamentaria la cual no podía afectar la legítima de los herederos forzosos. Además, ordenó como procedente computar la porción del caudal hereditario correspondiente a la llamada legítima larga, para determinar la suficiencia de los bienes como para satisfacerla; de no haberlos tras efectuar dicho cómputo, pues, dictó procedente reducir la liberalidad mortis causa. Finalmente, el TPI supeditó dichos cómputos al resultado del pleito sobre división de comunidad de bienes hereditarios interpuesto en ese mismo foro judicial. (María Dolores Montañez Cruz v. Gregorio y Guillermina Montañez Cruz, Civil Núm. GAC2001- *94 0162).
Insatisfecha con la anterior determinación, la parte apelante acude ante nos imputándole al TPI la comisión de seis errores. En síntesis, la apelante advierte que el TPI erró al concluir que las “Cartas o Tarjetas Testamentarias” eran válidas por no haber sido abolidas en forma expresa por legislación aprobada bajo la Ley Núm. 6, supra, y estatutos subsiguientes; incidiendo, a su vez, al citar a Rodríguez Pérez v. Sucn. Rodríguez, supra, a modo de fundamentar su determinación. La apelante puntuabza que el foro apelado se extralimitó al concluir que la derogación de las tarjetas testamentarias por vía de legislación fue de carácter tácito, por lo que retienen su validez hasta tanto no sean derogadas de manera expresa por el legislador, interpretando consecuentemente las mismas como donaciones mortis causa, sujetas a las reglas de sucesión testamentaria. Finalmente, la apelante controvirtió la supeditación de la designación de beneficiario y los cómputos a ser determinados para satisfacer la llamada donación mortis causa a favor de Martínez Cruz al resultado del referido pleito sobre División de Comunidad de Herederos, previamente interpuesto ante el TPI.
Esbozados los hechos pertinentes al caso ante nos y con el beneficio de la comparecencia de las partes, procedemos a exponer el derecho aplicable.
II
La viuda del causahabiente y sus siete hijos apuntalan que la designación de beneficiario por vía de tarjeta testamentaria es nula, ya que a partir de la Ley Núm. 6, supra, se derogó la vigencia de las mismas y la subsiguiente legislación al respecto ratificó su inexistencia. Les asiste la razón.
A
Contrario a lo procedente, el TPI avaló la postura de la parte apelada al dictaminar que la aludida derogación fue una de carácter tácito, y mantuvo la vigencia de las tarjetas testamentarias hasta tanto exista legislación expresa. El trayecto histórico y las enmiendas efectuadas a la Ley Núm. 1 de 15 de junio de 1973, cuerpo legal precursor de la creación de las cooperativas de ahorro y crédito de Puerto Rico, tuvieron el inequívoco efecto de derogar la vigencia de las tarjetas testamentarias para darle plena consecuencia y vigor al derecho sucesorio preceptuado en nuestro Código Civil.
Para esbozar el fundamento que sostiene la conclusión anterior, es preciso determinar cuál fue la intención legislativa al aprobar la Ley Núm. 6, supra, y demás enmiendas a la misma. Es nuestro deber el descubrir y hacer cumplir la verdadera intención y deseo de la Asamblea Legislativa al aprobar dichos estatutos. Para ello, la exposición de la ley y su texto son las fuentes de mayor importancia en la tarea de determinar el significado de un acto legislativo. Exponemos al respecto.
A. La interpretación judicial de la intención legislativa
Es menester repasar que en materia de auscultar la intención legislativa, la función de los tribunales es interpretar la ley, sin juzgar su bondad o sabiduría. Famanina v. Corp. Azucarera de P.R., 113 D.P.R. 654 (1982). Es obligación de los tribunales armonizar, hasta donde sea posible, todas las disposiciones de ley envueltas en el caso con miras a lograr un resultado sensato, lógico y razonable que represente la intención del legislador. Andino v. Fajardo Sugar Co., 82 D.P.R. 85, 94 (1961); García Comercial v. Secretario de Hacienda, 80 D.P.R. 765, 774-775 (1958).
El Tribunal Supremo de Puerto Rico ha establecido que los tribunales sólo están autorizados a interpretar leyes cuando, entre otras, no son claras o concluyentes sobre un punto en particular; cuando el objetivo es el de suplir una laguna en la misma o con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, cuando la justicia así lo requiere. Calderón v. Administración de Sistemas de Retiro, 129 DPR 1020 (1992).
*95 También nos corresponde interpretarla cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere. íd.
A tales efectos, el más destacado y fundamental compás de la interpretación racional es el elemento derivado del fin de la ley, y de forma tal que se ajuste a la política pública que la inspira. La ley siempre es el medio para obtener un fin y, por consiguiente, ha de ser interpretada atribuyéndole el sentido que mejor responda a la realización del resultado que a través de ella se quiere obtener. En el proceso de interpretación, no debemos desvincularla del problema cuya solución persigue, pues tenemos el deber de hacer que el derecho sirva propósitos útiles y evitar una interpretación tan literal que lleve a resultados absurdos. Departamento de la Familia v. Ramos, 2003 J.T.S. 38; Secretario del Trabajo v. G.P. Industries, Inc., 2001 J.T.S. 7; Franco v. Departamento de Educación, 148 DPR 703 (1999); Calderón v. Administración de Sistemas de Retiro, supra.
Entretanto, las leyes no se interpretan ni se aplican en el vacío. Valentín v. Housing Promoters, Inc., 146 DPR 712 (1998). Debemos recordar el principio de que lo está en el espíritu de un estatuto, está en el estatuto, aunque no esté en su letra; y lo que está en su letra no está en el estatuto, a menos que esté en su intención. Secretario del Trabajo v. G.P. Industries, Inc., supra; Figueroa v. Díaz, 75 D.P.R. 163 (1953). De este modo, si un estatuto concede un derecho sustantivo, el mismo no debe quedar derrotado porque el legislador no exprese la forma de hacerlo valer. Bachman v. Peñagarícano, 87 DPR 41 (1962).
Así pues, el tribunal debe siempre considerar cuál fue el propósito perseguido por la Asamblea Legislativa al aprobar una legislación, de manera que nuestra interpretación asegure la efectividad de la intención legislativa. Departamento de la Familia v. Ramos, supra; Martínez v. Oficina del Gobernador, 2000 J.T.S. 185; Zambrana Maldonado v. ELA, 129 DPR 740; Vázquez v. ARPE, 128 DPR 513 (1991). En el proceso de encontrar el significado de una ley que logre los propósitos del legislador, la interpretación debe hacerse con fines socialmente útiles. Departamento de la Familia v. Ramos, supra; Pizarro v. Nicot Santana, 2000 J.T.S. 144; Zambrana Maldonado v. ELA, supra.
Debemos tomar en consideración que todo acto legislativo persigue un propósito, trata de corregir un mal, alterar una situación existente, complementar una reglamentación vigente, fomentar algún bien específico o bienestar en general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno, entre otros. Pérez Pérez v. Municipio de Lares, 2001 J.T.S. 163; Secretario del Trabajo v. G.P. Industries, Inc., supra; Chévere v. Levis Goldstein, 2000 J.T.S. 175. La exposición de motivos de la ley, los informes de las comisiones y los debates en el hemiciclo, además del texto de la misma, son las fuentes de mayor importancia en la tarea de determinar el significado de un acto legislativo. Pérez Pérez v. Municipio de Lares, supra; Secretario del Trabajo v. G.P. Industries, Inc., supra; Chévere v. Levis Goldstein, supra.
Los tribunales, generalmente, podemos rechazar una interpretación exactamente literal que conduzca a consecuencias irrazonables. La literalidad puede ser ignorada por los tribunales sólo cuando ella es claramente contraria a la verdadera intención o propósito legislativo, según tal propósito o intención puede surgir de la totalidad del estatuto o de la sección envuelta. Clínica Juliá v. Srio. de Hacienda, 16 D.P.R. 509, 520- 522 (1954).]
Por ello, corresponde a los tribunales el resolver las contradicciones en el propio estatuto a base de la intención auténtica del legislador. Ese propósito no debe ser el del juez, sino el del legislador, según surja del estatuto en sí. El juez es un intérprete y no un creador. Comunidad Fajardo v. Tribunal de Contribuciones, 73 D.P.R. 543 (1952). La función de la interpretación judicial para negar eficacia a un precepto, se extiende hasta el punto de sustituir o eliminar judicialmente alguna disposición estatutaria que derrote el propósito de la ley. Rocafortv. Alvarez, 112 D.P.R. 563, 571 (1982); Rivera Cabrera v. Registrador, 113 D.P.R. 661, 665 (1982).
Todo conflicto entre disposiciones de un mismo estatuto debe resolverse a favor del propósito legislativo en *96 su integridad, en armonía con el más eficaz cumplimiento y pleno efecto del mismo; la obligación judicial fundamental en estos casos es la de imprimirle efectividad a la intención legislativa, aun hasta el punto de sustituir o eliminar alguna frase específica que, con claridad, haya sido incorporada a un estatuto por inadvertencia o error, hasta el punto de que esa frase derrote obviamente la intención legislativa que surge de la totalidad de la ley. Concora Marina, Inc. v. Srio. de Hacienda, 114 D.P.R. 248, 258 (1983).]
B. La procedencia de las Sociedades Cooperativas, en general, y las Sociedades Cooperativas de Ahorro y Crédito en Puerto Rico
La Ley Núm. 291 de 9 de abril de 1946, según enmendada, conocida como la “Ley General de Sociedades Cooperativas”, ha servido de base para lo que hoy conocemos como el movimiento cooperativo puertorriqueño. Esta ley fue promulgada para estimular actividades de producción y de servicios a través de la estructura cooperativa. La misma rige cooperativas de consumo, vivienda, agricultura, transportación y otras. Véase Exposición de Motivos, Ley Núm. 291, supra. Quedan fuera de la aplicación directa de esta ley los sectores de crédito y de seguros, que en la actualidad constituyen los principales sectores del cooperativismo, y que se rigen por leyes especialmente promulgadas para esos fines, como veremos más adelante.
El Art. 10 de la Ley Núm. 291, supra, 5 L.P.R.A. 890(C), el cual regulaba el procedimiento para la disposición de lo que se podría considerar como los fondos depositados en la cooperativa o el interés acumulado de un socio en las mismas:

“En caso de muerte del socio, el interés de éste en los bienes de la sociedad le será entregado a sus beneficiarios si el socio lo ha designado en la tarjeta testamentaria que preparará la oficina del Inspector de Cooperativas de Puerto Rico, y a falta de la tarjeta testamentaria, a los herederos.”

Esta ley fue derogada por la Ley Núm. 50 de 4 de agosto de 1994, 5 L.P.R.A. 4001 y ss., conocida como la “Ley General de Sociedades Cooperativas de Puerto Rico ”. En cuanto a su alcance, el Artículo 11.03 de la Ley Núm. 6, supra, nos dice que la mencionada Ley Núm. 50 será supletoria a la misma, siempre y cuando no entre en oposición o conflicto, o fuese incompatible con la ley especial para cooperativas de ahorro y crédito. 7 L.P. R.A. 1351 (Historial.) Aunque, como veremos más adelante, ambas piezas legislativas resuelven el presente pleito de idéntica manera.
Por su parte, el factor crediticio de las sociedades cooperativas fue incorporado en nuestro andamiaje jurídico en virtud de la Ley Núm. 1 de 15 de junio de 1973, según enmendada, conocida como la “Ley de Sociedades Cooperativas de Ahorro y Crédito”. La primera de las enmiendas que sufrió dicho cuerpo legal fue mediante la Ley Núm. 6, supra, conocida también como la “Ley de Sociedades y Cooperativas de Ahorro y Crédito de 1989”. 7 L.P.R.A. 1351 y ss.
En cuanto a la naturaleza del acto de disposición efectuado por cualquier causante, se reconocía lo siguiente. Antes de la derogación de la Ley Núm. 1, supra, la llamada “tarjeta testamentaria” era considerada como una forma de donación mortis causa, “efectiva a la fecha del fallecimiento del socio, [la cual se consideraba como] una donación que ha de producir sus efectos a la muerte del donante”, y estaba regida su efectividad por las reglas de sucesión testamentaria, Art. 562 de Código Civil, 31 L.P.R.A. 1985, sujeta la validez de dicha liberalidad mortis causa a la observancia de las solemnidades del testamento. Rodríguez Pérez v. Sucn. Rodríguez, supra, a la pág. 295. (Citas omitidas.)
El derogado Art. 31 de la Ley Núm. 1, supra, establecía lo siguiente respecto a las tarjetas testamentarias:

“Cualquier cantidad de dinero que haya pagado el socio por acciones y depósitos en la cooperativa, más cualquier [sic] suma por concepto de seguro de vida por acciones, dividendos o intereses que hubiera 
*97
acumulado dicho socio en la cooperativa, serán pagados [sic] en caso de retiro o expulsión del socio directamente y en caso de muerte a los beneficiarios que designe el socio en la tarjeta testamentaria cuyos términos fijará el Inspector de Cooperativas... 7 L.P.R.A. 1131. ”

Tanto la Ley Núm. 1, pieza legal precursora de las Cooperativas de Ahorro y Crédito, hasta la Ley Núm. 6, supra, vigente al momento del fallecimiento del causahabiente y rectora de la controversia que nos ocupa, como su homologa Ley Núm. 255 de 28 de octubre de 2002, cuya aprobación derogó la referida Ley Núm. 6, postulan el mismo sentir, conforme la intención del legislador. El historial legislativo y la exposición de motivos de dichos cuerpos legales coinciden en que el propósito rector de la actividad cooperativa es equiparar el mismo a un sistema económico que fomente la iniciativa privada, a la vez de contribuir con una sociedad más justa y equitativa, aportando de esa manera al desarrollo socioeconómico del País. Véase Exposición de Motivos de la Ley Núm. 225, supra, Ley Núm. 6, supra, y Ley Núm. 1, supra.
Asimismo, la Ley Núm. 291, supra, como la Ley 50, supra la cual regía en pleno vigor al momento del deceso del señor Montañez Cruz, y la actual Ley 239 de 1 de septiembre de 2004, la cual recién adoptó una nueva “Ley General de Sociedades Cooperativas de 2004”, teniendo como efecto la derogación de la Ley 50, hacen acopio del mismo sentir y reflejan el mismo propósito de acorde a la intención expresa del legislador.
Sobre los fondos existentes en las cooperativas de ahorro y crédito que, con anterioridad a la vigencia de la Ley Núm. 6, supra, un socio podía transmitir mediante la tarjeta testamentaria, los términos de la derogada Ley Núm. 1, supra, en su Artículo 31, autorizaban “a las cooperativas a pagarle (sic) a los beneficiarios designados cualquier cantidad de dinero pagado por el socio por acciones y depósitos y los dividendos o intereses acumulados.” Véase, Rodríguez Pérez v. Rodríguez, supra. (Bastardillas omitidas.)
Habiendo trazado el desarrollo histórico de las leyes que rigen las cooperativas de ahorro y crédito en nuestra jurisdicción, es menester nuestro delinear el acto de designación de beneficiarios mediante tarjetas testamentarias. A la luz de dicha exposición, entendemos que estaremos mejor ubicados para determinar la validez de las tarjetas testamentarias y el destino de los fondos que en ellas estén consignados.
C. La designación de beneficiarios y las tarjetas testamentarias
La designación de beneficiarios es una figura de nuestro Derecho que no está contemplada por el Código Civil de Puerto Rico. Responde a la realidad económica contemporánea, bajo la cual han florecido los planes de retiro y los seguros de vida, figuras desconocidas en la España feudal del Siglo XIX. Le aplican leyes especiales y, de forma subsidiaria, las disposiciones del Código Civil referentes a la donación. Véase Lage v. Central Fed. Savings, 108 D.P.R. 72 (1978).
El Tribunal Supremo interpretó esta figura en Rodríguez Pérez v. Sucn. Rodríguez, supra. Allí se trataba de una tarjeta testamentaria dejada por el causante en la Cooperativa de Crédito y Ahorro de Hormigueros. En dicha instancia se resolvió que el efecto de la designación de beneficiarios estaba regulada por el Artículo 31 de la Ley de Sociedades Cooperativas de Ahorro y Crédito, Ley Núm. 1, supra, 7 L.P.R.A. see. 1131. La aplicación por parte del Tribunal Supremo de dicha ley a los hechos de Rodríguez, supra, únicamente responde a que al momento de la muerte del causahabiente estaba vigente esta ley y la misma hacía referencia inequívocamente clara y expresa de las tarjetas testamentarias y su función contenedora de la voluntad del socio en cuanto al destino de los fondos dotados en su cuenta de ahorro. Valga recordar que esta ley fue derogada y sustituida por la Ley Núm. 6, supra, 1 L.P.R.A. sec. 1351 y ss., y demás leyes posteriores.
En aquel momento histórico, se manifestó en Rodríguez que:
“La designación de beneficiarios para los bienes depositados en la cooperativa, efectiva a la fecha del *98 fallecimiento del socio, es una donación que ha de producir sus efectos a la muerte del donante. Como tal, nuestro ordenamiento dispone que se regirá por las reglas de la sucesión testamentaria. Art. 562 del Código Civil, 31 L.P.R.A. see. 1985. La validez de dicha liberalidad mortis causa está condicionada a que se guarden las solemnidades del testamento. Lage v. Central Fed. Savings, 108 D.P.R. 72, 88 (1978). ”
Aunque en este caso no se siguió la forma testamentaria, tal omisión no acarrea la nulidad de la donación porque aquí, a diferencia de Lage v. Central Fed. Savings, supra, el Art. 31 de la Ley de Sociedades Cooperativas de Ahorro y Crédito, supra, provee para la tramitación de la liberalidad prescindiendo de las formalidades de la testamentaría. Ya en Lage v. Central Fed. Savings, supra, pág. 88 esc. 18, habíamos reconocido que por legislación especial se podían autorizar este tipo de donaciones. Por tratarse de un caso en donde por estatuto se ha eximido a esta particular donación mortis causa de la rigidez de los requisitos del testamento, resolvemos que es válida la trasmisión (sic) de los fondos del causante en la cooperativa a los beneficiarios designados. íd, a la pág. 295 (Nota al calce omitida.)
Ahora bien, bajo el crisol doctrinario esbozado en el anábsis precedentemente expuesto, tanto la Ley Núm. 1, supra, como la Ley Núm. 291, han sido merecedoras de múltiples enmiendas. El factor de relevancia suprema y denominador de común del conjunto de piezas legislativas que han derogado y enmendado las leyes rectoras en el caso de Rodríguez, supra, es el siguiente. Ninguna de las referidas leyes aprobadas con posterioridad a la Ley Núm. 6, supra, encargada de derogar la Ley Núm. 1, supra, y la Ley Núm. 291, supra, nombran el término o concepto de “tarjeta testamentaria” como método idóneo para que un socio miembro de una cooperativa designe beneficiarios. Veamos en detalle.
El Artículo 6.06 de la Ley Núm. 6, supra, expresaba lo siguiente:

“Cuando un socio de una cooperativa se retire voluntariamente o sea expulsado de la misma, se le pagará, después de descontarse cualquier deuda que tenga con la cooperativa, la cantidad de dinero que dicho socio haya pagado por acciones y depósitos, más las cantidades que haya acumulado a base de dividendos y el reembolso de intereses, así como cualquier otra suma que corresponda por concepto de beneficios de seguros de visa. Dicho pago se efectuará dentro de los treinta (30) días siguientes al retiro o separación del socio.

En caso de muerte, los haberes netos después de los descuentos mencionados en el párrafo precedente, se pagarán a los beneficiarios que designe el socio en Tarjeta Testamentaria, cuyos términos fijará el Inspector. Los beneficios de seguro de vida se pagarán a los beneficiarios designados en una designación de beneficiarios al amparo del contrato de seguro, y si no hubiere tales beneficiarios designados, a los herederos, según las disposiciones sobre herencia y sucesiones del Código Civil de Puerto Rico, según enmendadas.

La Cooperativa podrá requerir que la notificación de retiro de depósitos se haga con treinta (30) días de anticipación y que la notificación de retiro de acciones se efectúe con noventa (90) días de anticipación. ” (Enfasis nuestro.)
Sin embargo, y abonando a nuestro entendimiento, la Ley Núm. 136, supra, enmendó esta sección en términos generales, eliminando de su texto el párrafo enfatizado en el acápite anterior, siendo el que rige los procesos de la controversia que nos atañe. En armonía con ello, la Ley Núm. 50, supra, 5 L.P.R.A. 4222, hace lo propio, disponiendo sobre la liquidación de la participación del socio que:

“En caso de retiro, muerte o separación de un socio, la cooperativa deberá pagar a éste, su representante autorizado, sus beneficiarios o sus herederos, según fuera el caso, la cantidad de dinero equivalente a su aportación, más cualquier suma por concepto de intereses que hubiese acumulado el socio en la cooperativa, dentro de los noventa (90) días del retiro, muerte o separación. La cooperativa deberá también ser diligente en 
*99
el pago de dividendos declarados, y en la realización de cualquier trámite relacionado con seguros de vida de la persona que ha cesado como socio. Cualquier deuda que tenga el socio■ con la cooperativa deberá ser descontada de dicho pago. ”

Interesantemente, y de extrema relevancia atinente con la controversia de autos, la sección 4222 finaliza su dictado así:
“En caso de muerte del socio, la cooperativa deberá cumplir con las disposiciones sobre sucesiones y herencias del Código Civil de Puerto Rico.” 5 L.P.R.A. 4222. (Énfasis nuestro.) 
Precisa también señalar que la Ley 14 de 17 de agosto de 2001, en virtud de la cual se crea la agencia para reestructurar la Corporación de Seguros de Depósitos de Cooperativas de Ahorro y Crédito, consolidó las facultades de supervisión bajo las leyes cooperativas y financieras en una sola entidad conocida como COSSEC. La referida Corporación de Seguros de Acciones y Depósitos de Cooperativas de Ahorro y Crédito (“PROSAD”); el Inspector de Cooperativas y a la Administración de Fomento Cooperativo. Una somera lectura de la Ley 114, supra, demuestra que el concepto de tarjetas testamentarias para designar beneficiarios no figura en su texto; por ende, ni en su espíritu o propósito.
Asimismo, basado en las disposiciones de la Ley Núm. 4 de 11 de octubre de 1985, según enmendada, conocida como la “Ley de la Oficina del Comisionado de Instituciones Financieras” y del Artículo 7.04 de la Ley Núm. 6, supra, el Comisionado de Instituciones Financiaras emitió el 16 de abril de 1996 la Carta Circular número 96-6-1 dirigida a todas las cooperativas de ahorro y crédito. Dicha carta circular recoge fielmente el estado de derecho vigente e imparte una serie de directrices a las cooperativas. El propósito de la carta es aclarar e interpretar ciertas disposiciones a la luz de la enmienda al Art. 6.06 de la Ley Núm. 6, aprobado por la Ley Núm. 136, supra, con relación a las tarjetas testamentarias para designar beneficiarios en caso de muerte y la disposición de bienes consignados en tales tarjetas.
La Carta Circular explica que al aprobarse la Ley Núm. 136 para enmendar la Ley de Sociedades Cooperativas y de Ahorro, se eliminaron todas las disposiciones concernientes a las tarjetas testamentarias. Restaba, pues, determinar judicialmente el procedimiento a seguir, una vez se dictase la improcedencia o abolición de las referidas tarjetas, toda vez que se pudiese impartir uniformidad en el mecanismo a seguir al momento de disponer de dichos bienes, acción que hoy pretendemos.
B
Frente a lo enarbolado en la discusión que precede, resulta inequívoco colegir, coincidiendo con la apreciación de los apelantes, que el silencio del legislador, al no mencionar nunca más el término “tarjetas testamentarias” con posterioridad a la Ley Núm. 6 de 1990, viabiliza mediante el uso de un lenguaje libre de ambigüedad la invalidación de lo que bien se podría considerar un vetusto método de disposición de bienes al tenor, claro está, de dicha intención legislativa. En otras palabras, como bien hemos visto, no existe legislación alguna que en la actualidad consagre la validez o vigencia de las tarjetas testamentarias como modo de transmitir bienes al momento de la muerte de un socio miembro bona fide de una cooperativa de ahorro y crédito de Puerto Rico.
En mérito de ello, por virtud de la Ley 136, supra (y no a partir de la Ley Núm. 6, supra, contrario a la apreciación de los apelantes), la Ley Núm. 50, supra, y su progenie, la eficacia de las tarjetas testamentarias es nula e inexistente a partir de 1994 hasta el presente.
Ello implica que todas aquellas designaciones, voluntades y destinos de bienes consignados en las tarjetas testamentarias, cuyo derecho se transmite desde el momento de la muerte del causahabiente, deben ceñirse al texto e intención legislativa a partir de la aprobación de la Ley Núm. 50 y Núm. 136, *100 según enmendadas, siempre y cuando el momento del deceso se suscitare después de entrar en vigor dichos cuerpos legales. A su vez, el procedimiento de disponer de dichas consignaciones se regirá única y exclusivamente por las disposiciones generales del Código Civil de Puerto Rico relativas al derecho sucesorio y testamentario, 31 L.P.R.A. 2081 y ss.
A la luz de lo anterior, y en cuanto a la determinación de que las disposiciones contenidas en las tarjetas testamentarias se les deben considerar como donaciones mortis causa, según fundamentado por el TPI en consonancia con lo discutido en Rodríguez Pérez v. Rodríguez, supra, resolvemos que dicha acepción es errónea, por lo que queda por no puesta, sin efecto legal alguno. Veamos porqué.
Como es sabido, la donación o “el acto de liberalidad por el cual una persona dispone gratuitamente de una cosa a favor de otra que la acepta”, resulta ser un mecanismo jurídico, el cual debe ceñirse a los especificaciones y parámetros legales supeditados al mandato legislativo esbozado en nuestro Código Civil, 31 L.P.R.A. 1981 et seq. La obligación indiscutible a la hora de constituirlas es cumplir cabalmente con dichos preceptos, de suerte que dicho acto supere y derrote toda posibilidad de ser revocado.
En el caso de marras, el causante falleció el 24 de noviembre de 2001, fecha en que estaba ya en pleno vigor la Ley Núm. 6, supra, la Ley Núm 50, supra, y la Ley Núm. 114, supra, según enmendadas, las cuales comparten el denominador común de no hacer mención alguna y dejar fuera del propósito, función, finalidad y espíritu de las mismas el mecanismo de las tarjetas testamentarias. Contrario a la contención instada por la parte apelada y avalado erróneamente por el TPI, el fundamento de Rodríguez Pérez v. Sucn. Rodríguez, supra, resuelto el 30 de abril de 1990, no tiene vigencia, por lo que no puede ser considerado favorablemente para resolver la controversia que nos ocupa. Sirva reiterar que nuestro análisis aúna en propender propósitos útiles, evitando una interpretación tan literal que pueda llevar a resultados absurdos. Departamento de la Familia v. Ramos, supra; Secretario del Trabajo v. G.P. Industries, Inc., 2001 J.T.S. 7; Franco v. Departamento de Educación, supra; Calderón v. Administración de Sistemas de Retiro, supra.
Recordemos que las leyes no se interpretan ni se aplican en el vacío. Valentín v. Housing Promoters, Inc., supra. Debemos enfatizar y repetir el principio de que lo está en el espíritu de un estatuto, está en el estatuto, aunque no esté en su letra; y lo que está en su letra no está en el estatuto, a menos que esté en su intención. Secretario del Trabajo v. G.P. Industries, Inc., supra; Figueroa v. Díaz, supra. Por lo tanto, si un estatuto concede un derecho sustantivo, el mismo no debe quedar derrotado porque el legislador no exprese la forma de hacerlo valer. Bachman v. Peñagarícano, supra. El consecuente silencio u omisión por parte del legislador del concepto y vigencia de las tarjetas testamentarias, no deja lugar a dudas de su intención de eliminar las mismas de toda consideración y como modo de transmitir bienes; es, pues, nuestra obligación fundamental en este caso imprimirle efectividad a la intención legislativa según expresada. Ello no implica que la forma óptima para eliminarlas hubiera sido consignándolo expresamente, Concora Marina, Inc. v. Srio. de Hacienda, supra.
Así, concluimos que los $67,206.99 consignados en el tribunal y que constituyen el balance de la cuenta, deben dividirse entre la mitad correspondiente a la sociedad de bienes gananciales que tenía constituido el causante Montañez Cruz con su esposa Luz María García Centeno, y la otra mitad a ser adjudicada a la sucesión del causahabiente.
Debido a que el causante falleció sin dejar testamento conocido, esta última distribución de bienes entre los herederos se hará conforme los postulados correspondientes a la sucesión intestada. Ello tiene como consecuencia que se abra para todo el caudal hereditario la sucesión intestada o aquel conjunto de normas de derecho establecido en el Código Civil para regular la ordenación y distribución del caudal de una persona que fallece sin testamento o con testamento total o parcialmente ineficaz. E. González Tejera, Derecho Sucesorio Puertorriqueño, San Juan; Puerto Rico, Ramallo Bros. Printing, Inc., 1983; Fernández Franco v. Castro Cardoso, 119 D.P.R. 154, 160 (1987).
*101 III
Finalmente, en cuanto a la determinación del foro apelado, a saber, que los cómputos para determinar la legítima larga a modo de descifrar si hay bienes suficientes para satisfacer la supuesta donación mortis causa, disponemos lo siguiente. Al dejar sin efecto la designación de Guillermina Montañez Cruz como beneficiaria de la cantidad consignada por el causante en la taijeta testamentaria en el 1989, por decretar su nulidad e invalidez, le resta necesidad a hacer cómputo alguno que deba estar supeditado al resultado del pleito sobre división de comunidad de herederos interpuesto en el TPI. Por lo que se ordena a Mauna Coop retirar el dinero consignado en el foro apelado y lo ponga a la disposición de la parte aquí interventora-apelante, a tenor con el mandato expreso de la Ley Núm. 6, supra, la Ley Núm. 50, supra, según reza su Artículo 22.2 y demás estatutos aplicables. Los errores imputados fueron cometidos.
IV
Por todo lo anterior, se revoca la sentencia apelada y se ordena a Mauna Coop retirar el dinero consignado en el foro apelado y lo ponga a la disposición de la parte aquí interventora-apelante, a tenor con el mandato expreso de la Ley Núm. 6, supra, la Ley Núm. 50, supra, según reza su Artículo 22.2 y demás estatutos aplicables.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones