TEXTO COMPLETO DE LA SENTENCIA
Los hermanos Asunción y José Santiago Cardona García nos solicitan que revoquemos la resolución emitida *796 por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 28 de diciembre de 2007. En ésta se denegó su petición de resolución declaratoria ex parte para que se les reconocieran ciertos derechos exclusivos sobre los fondos, intereses y otros beneficios depositados por su difunta hermana Petra Mack García en la cooperativa conocida como Universal Coop Federal Credit Union (Universal Coop.).
Tras un estudio detenido del expediente del presente caso, y con el beneficio de la comparecencia de ambas partes, expedimos el auto de certiorari y confirmamos la resolución recurrida.
Veamos los antecedentes fácticos y procesales que justifican esta determinación.
I
El 3 de octubre de 1986, la señora Petra Mack García suscribió un testamento abierto en el que instituyó como herederos universales a sus tres sobrinos nietos Ana Rosario, Luis Ricardo y Antonio Luis, todos de apellidos Mellado González, y a sus dos sobrinos Carlos Manuel y Alejandro González Álvarez, quienes constituirían su sucesión después de su muerte. Pasados varios años de la expresión de esta última voluntad, doña Petra ingresó como socia a la Universal Coop, y durante más de una década depositó allí sus ahorros y otros valores pecuniarios.
El 13 de diciembre de 2002, la señora Mack García abrió una nueva cuenta en Universal Coop, con su número original de socia, el 110981. En autos aparecen dos documentos con ese propósito. Uno en español y otro en inglés en el que sólo parece su firma, número de seguro social y el número de socia. En esa fecha no se añadió la firma de funcionario alguno de la cooperativa a esos documentos. La firma del oficial que aparece en ambos folios se añadió en julio de 2003, cuando se dio por “aprobada” esa segunda solicitud de ingreso.
En la misma fecha en que suscribió la nueva solicitud de ingreso, la señora Mark García nombró a sus hermanos Asunción y José Santiago Cardona García como beneficiarios de “[sus] intereses en la cooperativa, de acuerdo con las disposiciones de las leyes de los Estados Unidos y Puerto Rico aplicables”. En el formulario en el que hizo la atribución, titulado Designación de Beneficiarios, aparece la firma de la señora Mack García, pero son los propios hermanos beneficiarios los que certificaron con su firma que ella suscribió el documento en su presencia. Tampoco se registró ese día la firma de oficial alguno de la cooperativa para acreditar tal actuación.
Ese día, los hermanos Cardona García también suscribieron un documento titulado Joint Share Account Agreement. [1] En este documento aparecen las firmas de los hermanos Cardona García junto a las palabras “joint owners”, pero no se escribió el número de la cuenta ni incluyó la firma de la señora Mack García, quien era la única dueña de todos los fondos cuya titularidad habría de compartirse. En este documento tampoco aparece la firma de algún empleado o sello de la cooperativa que permitiera validar las alegaciones de los peticionarios de que se trató de un acuerdo suscrito con la socia titular para convertirse los tres comparecientes en cotitulares de los fondos depositados por ella en la cooperativa.
La señora Mack García falleció el 23 de febrero de 2003 sin heredero forzoso alguno que le sobreviviera. Conocida la última voluntad de la causante, los hermanos Cardona García presentaron una demanda de impugnación del testamento abierto que la señora Mack García suscribió en 1986. Alegaron que el testamento adolecía de varios defectos de forma y de fondo, por lo que no era válido para regir la sucesión de su causante.
El Tribunal de Primera Instancia declaró sin lugar la demanda de impugnación de testamento, determinación que fue confirmada por esta Curia. El Tribunal Supremo denegó la expedición del auto de certiorari para revisar nuestra determinación, por lo que la decisión sobre la validez del testamento advino final y firme.
Posteriormente, los hermanos Cardona García presentaron una petición ex parte, que titularon resolución declaratoria, sobre sus derechos como beneficiarios de la cuenta de la señora Mack García en Universal Coop. *797 Alegaron, entre otras cosas, que a la señora Mack García no le sobrevivió heredero forzoso alguno y que procedía que la cooperativa les entregara el balance de la cuenta número 110981, por ser ellos los beneficiarios designados por la causante. Oportunamente, la Sucesión Mack García intervino en este pleito ex parte y se opuso a la petición de resolución declaratoria.
Tras varios incidentes procesales que no es necesario relatar, el foro de primera instancia emitió la resolución impugnada el 28 de diciembre de 2007. Resolvió que los fondos depositados en Universal Coop, le pertenecían al caudal relicto de la señora Mack García y que debían ser distribuidos entre los herederos universales instituidos en su testamento abierto del 1986. Específicamente, el tribunal recurrido resolvió que la designación de beneficiarios realizada por la señora Mack García, al igual que el Joint Share Account Agreement suscrito por los peticionarios, no cumplía con las disposiciones testamentarias del Código Civil de Puerto Rico. Por ello, ninguno de los documentos mencionados constituyó una donación mortis causa válida.
Inconformes, los hermanos Cardona García acuden ante este foro para que revoquemos esa determinación. Nos plantean, en síntesis, que el Tribunal de Primera Instancia cometió un error cuando denegó su solicitud para entregarles la totalidad del balance de los fondos depositados por la señora Mack García en Universal Coop., de los cuales se consideran cotitulares y beneficiarios exclusivos.
La parte recurrida solicitó la desestimación del recurso por varios argumentos. No dimos curso al planteamiento jurisdiccional por tratarse de un asunto que el Tribunal de Primera Instancia atendió y no se recurrió de él oportunamente ante este foro. No hay duda de que las partes recurridas, al solicitar la intervención en el caso ex parte, se sometieron a la autoridad del foro judicial. Tampoco es correcto que el recurso no fue notificado a todas las partes activas en el pleito. La parte preterida ya no era litigante, pues la reclamación por la que compareció al pleito originalmente fue denegada y no tiene interés alguno en las reclamaciones que están pendientes de disposición. Así lo informó su abogada mediante comparecencia especial. No tenemos, pues, escollos procesales que nos impidan resolver la cuestión planteada.
II
A los efectos de este recurso, admitimos como auténticas las firmas de la señora Mark García en los aludidos documentos, porque el cuestionamiento hecho por la parte recurrida ante el Tribunal de Primera Instancia no se sostuvo por prueba pericial que demostrara su falsedad. Tampoco se tratará el asunto relativo a la capacidad mental de la causante cuando suscribió los documentos en disputa, ya que tampoco se rebatió la presunción de capacidad ante el foro sentenciador.
Lo único que hemos de atender en este recurso es si los peticionarios demostraron ante el Tribunal de Primera Instancia la validez de la alegada designación de beneficiarios y sus efectos sobre la sucesión de la señora Petra Mark García.
El Código Civil de Puerto Rico reconoce varios modos de adquirir la propiedad y los demás derechos sobre los bienes muebles e inmuebles. El Artículo 549 dispone que la propiedad se adquiere por la ocupación, por la ley, por donación, por sucesión testada e intestada, por consecuencia de ciertos contratos mediante la tradición y por medio de la prescripción adquisitiva. 31 L.P.R.A. see. 1931.
Para reclamar el derecho de propiedad sobre los fondos depositados por la señora Mack García en la Universal Coop., los peticionarios tenían que demostrar ante el Tribunal de Primera Instancia que adquirieron su titularidad mediante uno de los hechos o actos jurídicos descritos o por virtud de un negocio jurídico, ya fuera inter vivos o mortis causa.
En lo que atañe al caso de autos, debemos analizar las consecuencias traslativas, si algunas, de la designación que la señora Mack García hizo a favor de sus hermanos como beneficiarios de sus intereses en la Universal *798 Coop. Para ese análisis sólo contamos con los documentos suscritos por ella y los peticionarios el 13 de diciembre de 2002. De ordinario, estas designaciones se conocen como tarjetas testamentarias y tienen el propósito de transferir intereses y valores pecuniarios a personas predeterminadas por el socio de una cooperativa o entidad financiera al momento de su muerte. Véase Efraín González Tejera, I Derecho de Sucesiones 349-353 (Edit. U.P, R. 2001).
En Puerto Rico, tales designaciones o instrumentos estuvieron regulados por las diversas leyes que regían las sociedades cooperativas desde mediados del siglo pasado hasta 1994. Así, la Ley Núm. 291 de 9 de abril de 1946, según enmendada, conocida como Ley General de Sociedades Cooperativas —que sirvió de base al movimiento cooperativo puertorriqueño en las áreas de consumo, vivienda, agricultura, transportación, entre otras actividades económicas del país — , fue luego sustituida por otras leyes que eventualmente abandonaron la regulación de ese instrumento como transmisión de los intereses de un socio cooperativista a terceras personas. La Ley Núm. 291 fue derogada por la Ley Núm. 50 de 4 de agosto de 1994, que se conoció como la Ley General de Sociedades Cooperativas de Puerto Rico de 1994. 5 L.P.R.A. see. 4001 y ss. La ley vigente es la Ley Núm. 239 de 1ro de septiembre de 2004, 5 L.P.R.A. see. 4381 et seq., que no contiene disposición alguna sobre ese particular.
Las cooperativas dedicadas al crédito y al ahorro han estado sujetas a legislación separada. La anterior Ley de Sociedades Cooperativas de Crédito de 1947, Ley Núm. 10 de 1ro. de julio de 1947, fue derogada por la Ley de Sociedades Cooperativas de Ahorro y Crédito de 1973, Ley Núm. 1 de 15 de junio de 1973. 7 L.P.R.A. sec. 1101. Desde entonces, todas Jas cooperativas de ahorro y crédito en Puerto Rico quedaron reglamentadas por este estatuto. Las disposiciones de la Ley General de Sociedades Cooperativas siempre han sido fuentes supletorias cuando no estén en oposición o conflicto o sean incompatibles con la ley especial que regula las cooperativas de ahorro y crédito.
Sobre el asunto de las “tarjetas testamentarias'”, tanto la Ley Núm. 205, para las cooperativas generales, como la Ley Núm. 206 de 3 de mayo de 1951, para las cooperativas de crédito, respetaron el uso de este mecanismo para la designación de beneficiarios. La Ley de Sociedades Cooperativas de Ahorro y Crédito de 1973 no alteró esa disposición.
En lo que importa al caso de autos, el Artículo 10 de la Ley Núm. 291, según enmendada, regulaba el procedimiento para la disposición de los fondos depositados o el interés acumulado de un socio en una cooperativa así:

“En caso de muerte del socio, el interés de éste en los bienes de la sociedad le será entregado a sus beneficiarios si el socio lo ha designado en la tarjeta testamentaria que preparará la oficina del Inspector de Cooperativas de Puerto Rico, y a falta de la tarjeta testamentaria, a los herederos. ”

Énfasis nuestro. 5 L.P.R.A. sec. 890(c).
Por su parte, la Ley de Sociedades Cooperativas de Ahorro y Crédito de 1973 también contenía regulación para esta actividad particular. El Artículo 31 de esta ley autorizaba a las cooperativas a pagarles a los beneficiarios designados por un socio cualquier cantidad de dinero, invertida por él en la compra de acciones, en depósitos, dividendos o intereses acumulados para el caso de su muerte, por medio de las tarjetas testamentarias:
“Cualquier cantidad de dinero que haya pagado el socio por acciones y depósitos en la cooperativa, más cualquier suma por concepto de seguro de vida por acciones, dividendos o intereses que hubiera acumulado dicho socio en la cooperativa, serán pagados eh caso de retiro o expulsión del socio directamente y en caso de muerte a los beneficiarios que designe el socio en la tarjeta testamentaria cuyos términos fijará el Inspector de Cooperativas. [...]” *799 Énfasis nuestro. 7 L.P.R.A. see. 1131.
La Ley Núm. 6 de 15 de enero de 1990, conocida como Ley de Sociedades y Cooperativas de Ahorro y Crédito de 1989, 7 L.P.R.A. see. 1351 y ss., sustituyó la Ley de Sociedades Cooperativas de Ahorro y Crédito de 1973 y dejó vigente una disposición similar a la reseñada.
Cuando un socio de una cooperativa se retire voluntariamente o sea expulsado de la misma, se le pagará, después de descontarse cualquier deuda que tenga con la cooperativa, la cantidad de dinero que dicho socio haya pagado por acciones y depósitos, más las cantidades que haya acumulado a base de dividendos y el reembolso de intereses, así como cualquier otra suma que corresponda por concepto de beneficios de seguros de vida. Dicho pago se efectuará dentro de los treinta (30) días siguientes al retiro o separación del socio.
En caso de muerte, los haberes netos después de los descuentos mencionados en el párrafo precedente, se pagarán a los beneficiarios que designe el socio en tarjeta testamentaria, cuyos términos fijará el Inspector. Los beneficios de seguro de vida se pagarán a los beneficiarios designados en una designación de beneficiarios al amparo del contrato de seguro, y si no hubiere tales beneficiarios designados, a los herederos, según las disposiciones sobre herencia y sucesiones del Código Civil de Puerto Rico, según enmendadas.
La Cooperativa podrá requerir que la notificación de retiro de depósitos se haga con treinta (30) días de anticipación y que la notificación de retiro de acciones se efectúe con noventa (90) días de anticipación.
Énfasis nuestro. 7 L.P.R.A. sec. 1356e.
Tres años después, la Ley Núm. 50 o Ley General de Sociedades Cooperativas de Puerto Rico de 1994, también autorizó el mecanismo de disposición especial, aunque sujetó la entrega de depósitos en caso de muerte a las normas aplicables del Código Civil:

“En caso de retiro, muerte o separación de un socio, la cooperativa deberá pagar a éste, su representante autorizado, sus beneficiarios o sus herederos, según fuera el caso, la cantidad de dinero equivalente a su aportación, más cualquier suma por concepto de intereses que hubiese acumulado el socio en la cooperativa, dentro de los noventa (90) días del retiro, muerte o separación. La cooperativa deberá también ser diligente en el pago de dividendos declarados, y en la realización de cualquier trámite relacionado con seguros de vida de la persona que ha cesado como socio. Cualquier deuda que tenga el socio con la cooperativa deberá ser descontada de dicho pago.

En caso de muerte del socio, la cooperativa deberá cumplir con las disposiciones sobre sucesiones y herencias del Código Civil de Puerto Rico. ”

Énfasis nuestro. 5 L.P.R.A. see. 4222.
A base de esta legislación, en Rodríguez Pérez v. Sucesión Rodríguez, 126 D.P.R. 284, 295 (1990), el Tribunal Supremo reiteró que designación de beneficiarios para los bienes depositados en una cooperativa efectiva a la fecha del fallecimiento del socio es una donación que ha de producir sus efectos a la muerte del donante. Como tal, nuestro ordenamiento dispone que se regirá por las reglas de la sucesión testamentaria. Art. 562 Código Civil, 31 L.P.R.A. see. 1985. Es decir, la validez de dicha liberalidad mortis causa está condicionada a que se guarden las solemnidades del testamento, salvo que haya legislación especial que lo autorice. Véase también a Lage v. Central Federal Savings, 108 D.P.R. 72, 88 (1978).
Por lo dicho, aunque en ese caso no se siguió la forma testamentaria, el Alto Foro concluyó que la omisión no acarreaba la nulidad de la donación porque allí, a diferencia de lo planteado en el precedente de Lage v. Central *800 Federal Savings, el Artículo 31 de la Ley. de Sociedades Cooperativas de Ahorro y Crédito de 1989 proveía para la tramitación de la liberalidad prescindiendo de las formalidades de la testamentaría. Dijo el tribunal: “Por tratarse de un caso en donde por estatuto se ha eximido a esta particular donación mortis causa de la rigidez de los requisitos del testamento, resolvemos que es válida la transmisión de los fondos del causante en la cooperativa a los beneficiarios designados.” Rodríguez Pérez v. Sucesión Rodríguez, 126 D.P.R. a la pág. 295.
Poco tiempo después de la publicación de esta opinión, la Ley Núm. 136 de 9 de agosto de 1995 le introdujo varias enmiendas importantes a la Ley Núm. 6 de 1990, entre ellas, eliminó de la Ley de Sociedades Cooperativas de Ahorro y Crédito la disposición que permitía las trasferencias mediante la designación de beneficiarios en tarjetas testamentarias.
Cuando un socio de una cooperativa se retire voluntariamente o sea expulsado de la misma, se le pagará, después de descontarse cualquier deuda que tenga con la cooperativa, la cantidad de dinero que dicho socio haya pagado por acciones y depósitos más las cantidades que haya acumulado a base de dividendos y el reembolso de intereses, así como cualquier otra suma que corresponda por concepto de beneficios de seguros de vida. Dicho pago se efectuará dentro de los treinta (30) días siguientes al retiro o separación del socio.
La Cooperativa podrá requerir que la notificación de retiro de depósitos se haga con treinta (30) días de anticipación y que la notificación de retiro de acciones se efectúe con noventa (90) días de anticipación.
7 L.P.R.A. sec. 1356e.
Es decir, en cuanto al tema que nos atañe, las leyes sobre la materia cooperativista regulaban el problema de manera similar hasta que se alteró radicalmente el estado de derecho con la eliminación del párrafo de la Ley Núm. 6 que lo autorizaba. Para atender este nuevo estado de cosas, el Comisionado de Instituciones Financiaras emitió la Carta Circular Núm. 96-6-1, de 16 de abril de 1996, a todas las cooperativas de ahorro y crédito. Concluyó que la Ley Núm. 136 eliminó la transferencia de fondos mediante tarjetas testamentarias. A partir de la vigencia de esta ley, tales disposiciones se regirían por el Código Civil de Puerto Rico. Los tribunales atenderían las reclamaciones generadas por el procedimiento abolido por el legislador. Los fondos afectados se depositarían en el tribunal hasta que se resolviera la controversia sobre su titularidad.
Ahora bien, la Ley Núm. 255 de 28 de octubre de 2002 derogó la Ley de Sociedades y Cooperativas de Ahorro y Crédito de 1989 y entró en vigor inmediatamente después de su aprobación. La nueva medida legislativa no contiene disposiciones sobre la designación de beneficiarios. No hay duda dé que se eliminó definitivamente el uso de la llamada tarjeta testamentaria en el contexto aludido. Aunque la señora Mack García era socia de la Universal Coop, desde 1992, en el caso de autos, los actos que generan el pleito ocurrieron el 13 de diciembre de 2002. Hemos analizado, pues, si la designación de beneficiarios suscrita por la señora Mack García cumplió con los requisitos impuestos a la voluntad testamentaria en el Código Civil. La respuesta es no.
Salvo algunas situaciones excepcionales que no están presentes en el caso de autos, el único testamento reconocido por nuestro ordenamiento jurídico que no requiere la intervención de un abogado notario es el testamento ológrafo. Es obvio que los documentos suscritos por la causante de las partes' en este pleito no constituyen un testamento de esa índole. [2] Por ello, resolvemos que la designación de beneficiarios realizada por la señora Mack García a favor de los peticionarios, efectiva después de su muerte, mediante la sola suscripción de la tarjeta testamentaria o designación de beneficiarios, no constituyó una transferencia válida de los intereses y bienes depositados por la causante en la Universal Coop. No adquirieron los peticionarios titularidad alguna por título sucesorio o testamentario sobre tales fondos, a tenor del Artículo 549, 31 L.P.R.A. see. 1931.
Ahora bien, cotejemos si los peticionarios adquirieron la propiedad sobre tales bienes por otro título o modo, como pudo ser una donación inter vivos o un acuerdo para la creación de una comunidad de bienes pro indiviso *801 entre su media hermana y ellos dos. El principio de autonomía de la voluntad permite que la gente organice y comparta su patrimonio de maneras diversas y creativas.
Como mencionamos, la señora Mack García pudo hacer partícipes a sus hermanos de los intereses y depósitos que tenía como socia de la Universal Coop, si ésa era su voluntad. Nótese que la Ley Núm. 255 de 28 de octubre de 2002 admite la transferencia de acciones mediante venta, cesión y donación, hecha en documento auténtico y con fecha cierta, a favor de personas que sean elegibles para ser socios de la cooperativa. Para que la transferencia sea efectiva, deberá presentarse a la cooperativa para su entrada en el registro de socios. 7 L.P.R.A. see. 1365 (a). La ley también define depósitos como “todos los haberes, excepto las acciones, que posea un socio o depositante en una cooperativa de ahorro y crédito y que estén evidenciados por cuentas de ahorros, certificados de depósito, cuentas de cheques, fondos de navidad, cuentas de retiro individual, cuentas en fideicomiso o cualquier otra cuenta o instrumento financiero de igual o similar naturaleza, según se determine mediante determinación administrativa o por reglamento emitido por la Corporación’’. 7 L.P.R.A. sec. 1361(o).
Respecto al dinero depositado, como bien mueble que es, pudo darse una donación o cesión gratuita inter vivos. Ésta pudo realizarse con la entrega inmediata dé los fondos donados o con la firma de un documento privado que recogiera la aceptación de la liberalidad, si no ocurría la entrega inmediata. Véanse los Artículos 558, 563 y 574 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 1981, 1986 y 2009. [3] Esto tampoco ocurrió en el caso de autos. Ni hubo transferencia válida de las acciones o, al menos, conforme lo exige la Ley Núm. 255; ni hubo una donación de cosa mueble válida y efectiva, como lo exige el Código Civil.
Incluso, la señora Mack García y los hermanos Cardona García pudieron crear una comunidad de bienes sobre los fondos depositados en la Universal Coop. A tal efecto, el Artículo 326 del Código Civil establece que existe una comunidad de bienes cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas. 31 L.P.R.A. see. 1271. En ausencia de pacto o alguna otra evidencia que establezca lo contrario, se presume que son iguales las cuotas o participaciones de cada comunero en los bienes de la comunidad. Artículo 327 del Código Civil, 31 L.P.R.A. see. 1272.
No tenemos duda de que el documento titulado Joint Share Account Agreement pudo servir tal propósito en vida de todos los hermanos y aún después de la muerte de la titular original, si previamente se hubiera hecho una transmisión efectiva del dominio sobre tales fondos a favor de los peticionarios. Un escollo esencial nos impide reconocerlo así después de la muerte de la causante.
El documento titulado Joint Share Account Agreement dispone textualmente:

“The.[espacio aparece en blanco].Credit Union is hereby authorized to recognize any of the signatures subscribed hereto in the payment of funds or the transaction of any business for this account. The joint owners of this account, hereby agree with each other and with said Credit Union that all sums now paid in on shares, or heretofore or hereafter paid in on shares by any or all of said joint owners to their credit, as such joint owners with all accumulations thereon, are and shall be owned by them jointly, with right to survivorship and be subject to the withdrawal or receipt of any of them, and payment to any of them or the survivor or survivors shall valid and discharge said Credit Union from any liability for such payment.

Any or all of said joint owners may pledge all or any part of the shares in this account as collateral security to a loan or loans.

The right or authority of the credit union under this agreement shall not be changed or terminated by said owners, or any of them except by written notice to said credit union which shall not affect transactions therefore made.

*802 Dated: 12/13/02_ (Fdo.) José Cardona García
_ (Fdo.) Asuncion Cardona Joint
Joint Account No._ _Owners ”
Como advertimos, en este documento aparecen únicamente las firmas de los hermanos Cardona García como “joint owners” de una cuenta que nó se identifica. Si se refería á la cuenta ya existente de su hermana Petra, en el documento no aparece la firma de ésta para avalar lo que allí se- “acordó” sobre los fondos que le pertenecían a ella privativamente. Nótese que el documento tenía espacios para, indicar el número de la cuenta y para que ella firmara junto a sus hermanos como “joint owner”. Repetimos, en este documento tampoco aparece la firma de empleado alguno o sello de la cooperativa que permitiera validar las alegaciones de los peticionarios de que se trató de un acuerdo suscrito con su hermana para convertirse los tres en cotitulares de los únicos fondos depositados en la cooperativa.
El acto de los hermanos Cardona García de firmar solos el documento Joint Share Account Agreement fue inconsecuente en cuanto a la adquisición de algún derecho dominical sobre “los depósitos ” de la causante en la cooperativa. Tal cotitularidad dependía de que la socia Mack García expresara por escrito, avalado por su firma, que quería compartir con ambos peticionarios, en igual o dispar proporción, los derechos de propiedad que ella tenía sobre tales fondos o “intereses”. Pero así tenía que surgir claramente de los documentos presentados ante el Tribunal de Primera Instancia para probar tal hecho. Luego de examinarlos con la misma autoridad con la que los evaluó el foro recurrido, por tratarse de prueba documental, no captamos ese acto con certeza.
No erró el Tribunal de Primera Instancia al concluir que no hubo una transmisión onerosa o lucrativa válida del título de propiedad sobre los intereses y depósitos de la señora Mack García en la Universal Coop Federal Credit Union. Los peticionarios no tienen derecho al reclamo presentado ante el Tribunal de Primera Instancia.
III
Por los fundamentos antes expuestos, luego de expedir el auto de certiorari solicitado, resolvemos confirmar la resolución emitida por el Tribunal de Primera Instancia el 28 de diciembre de 2007.
Lo pronunció y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 24

1. Aunque en el expediente se muestra ese acuerdo como parte de un sólo documento en el que aparece la firma de la hermana difunta, lo cierto es que se trata de dos formularios separados que cumplen propósitos distintos, ya que aquél en el que aparece la firma de doña Petra no es más que un formulario en inglés para el ingreso a la cooperativa (/ hereby make application for membership in the Palmer G.E. Employee's Federal Credit Union, Universal Coop Federal Credit Union.). Ambos formularios constituyen eventos distintos cuya impresión o fotocopia se recogen en un mismo folio.

2. El Artículo 637 del Código Civil, 31 L.P.R.A. see. 2161, establece los requisitos básicos del testamento ológrafo: (1) debe ser otorgado por una persona mayor de dieciocho años, (2) debe estar escrito todo de puño y letra del testador y firmado por él, y (3) debe expresar el año, mes y día en que se otorgue. Por otro lado, el Artículo 639 del Código Civil, 31 L.P.R.A. see. 2163, dispone que el testamento ológrafo debe protocolizarse en un procedimiento á tal efecto ante el Tribunal de Primera Instancia, dentro de cinco años, contados desde el día del fallecimiento. Ante la ausencia de cualquiera de estos requisitos, el testamento ológrafo no será válido. En el presente caso, el documento suscrito por la señora Mack García no cumple los *803 requisitos del testamento ológrafo.

3. Estos preceptos disponen:

“Art. 558 La donación es un acto de liberalidad por el cual una persona dispone gratuitamente de una cosa en favor de otra que la acepta.

Art. 563 Las donaciones que hayan de producir sus efectos entre vivos, se regirán por las disposiciones generales de los contratos y obligaciones en todo lo que no se halle determinado en esta parte.

Art. 574 La donación de cosa mueble podrá hacerse verbalmente o por escrito. La verbal requiere la entrega simultánea de la cosa donada. Faltando este requisito, no surtirá efecto si no se hace por escrito y consta de la misma forma la aceptación. ”